Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



MARINA SIMPSON,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-05-00174-CR

Appeal from the

243rd District Court

of El Paso County, Texas

(TC# 20030D05411)




O P I N I O N

            This is an appeal from a jury conviction for the offense of felony driving while intoxicated.


 
The jury assessed punishment at ten years’ community supervision. We affirm.
I. SUMMARY OF THE EVIDENCE
             Myra Elder testified that on November 3, 2003, she was driving on Mesa Street in El Paso
between 7 and 7:30 p.m.


 As she neared the intersection with Schuster Street, she saw a vehicle
driving slowly in the right lane. As she passed, Elder saw that the driver, Appellant, was slumped
over with her head on top of the steering wheel. She appeared to be unconscious. Elder, a nurse,
thought that the driver might be suffering a medical emergency. She stopped her own vehicle in the
middle of the road and ran to the other vehicle to see if the driver was all right. She got no response. 
She put Appellant’s car in park and removed the keys from the ignition. Appellant slowly lifted her
head and called Elder a “bitch” in response to Elder’s inquiry as to her well being. Elder testified
that Appellant’s speech was slurred and that she did not appear to comprehend what Elder was
saying.
            Elder called “911” because she did not want Appellant to drive until she received some help. 
She retained the car keys. She determined that Appellant had not suffered a heart attack or a stroke. 
As she waited, Elder observed that Appellant was incoherent. She had slurred speech, and a strong
odor of alcohol was coming from the vehicle. Based upon those factors and Appellant’s use of
vulgar language, Elder formed the opinion that Appellant was intoxicated.
            Xavier Romero testified that he was an emergency medical technician with the El Paso Fire
Department. He was dispatched to Stanton and Schuster Streets on November 3, 2003 at about 7:30
p.m. Upon arrival, he saw Appellant and another woman arguing. He assessed Appellant’s
condition to determine if there was a medical emergency. Firefighter Romero determined that
Appellant was stable, and she exhibited no sign of a heart attack, stroke, or diabetic event. Her vital
signs were stable. Firefighter Romero smelled alcohol on Appellant’s breath, and he observed that
she walked with a slight stagger. She demonstrated a combative demeanor. Accordingly, he
assumed that Appellant was intoxicated.
            Officer Clinton Nelms, a patrol officer with the El Paso Police Department, testified that he
is certified as a standard field sobriety practitioner. That evening, he was dispatched to the scene. 
After speaking with Elder and Firefighter Romero, Nelms spoke to Appellant, who was seated in her
vehicle. He asked her to step out of her car. When she did so, her balance was unsteady. She was
uncooperative and belligerent. Officer Nelms smelled a strong odor of alcohol on Appellant’s
breath. He administered a horizontal gaze nystagmus test and a walk-and-turn test. Both tests
showed signs of intoxication. Appellant then requested a lawyer, and Officer Nelms did not
administer any other field tests. He observed that Appellant had bloodshot eyes, slurred speech, and
unsteady balance. Based upon these factors, the smell of alcohol on her breath, and the results of
the testing, Officer Nelms placed Appellant under arrest for driving while intoxicated. She was
handcuffed and placed in the back of the patrol car. At the regional police station, Appellant was
placed in a holding cell. She acted in what Officer Nelms characterized as a “dramatic fashion;” she
screamed when touched, and she threw herself against the wall when she was placed in the holding
cell.
            Officer Luis Acosta, the intoxilyzer operator, testified that when Appellant arrived at the
police station, she was arguing with Officer Nelms and appeared to be upset. Her speech was
slurred, she swayed, and she had glassy eyes. Her breath smelled of alcohol. While Appellant
refused to take the intoxilyzer test, Officer Acosta testified that based on his observations at the
police station, he thought she was intoxicated. Officer Acosta then drove Appellant to the central
police station. Appellant requested a lawyer and no further field sobriety testing or questioning
occurred.
            Appellant testified in her own defense. She stated that she had gotten into an argument with
a friend she was staying with on the night before the incident, and she had not gotten any sleep. On
the day of the incident, she had lunch with friends and no alcohol was consumed by anyone. At 6
p.m., she had dinner with a woman named Angelica Calasco at a restaurant in downtown El Paso. 
Appellant testified that she drank two glasses of wine, but she was unsure of the amount. Appellant
testified that she left the restaurant and drove on Stanton Street. She fell asleep and awoke to find
Elder reaching across her. Appellant stated that she was not intoxicated. She tried to perform the
tests for the officer, but the sidewalk was uneven and Elder was glaring at her.


 She refused to
perform any more tests.
            Calasco testified that she had dinner with Appellant and others on the evening in question. 
She thought that Appellant had two glasses of wine, but she was unsure. Appellant left the restaurant
at 7:15 p.m. Calasco testified that she did not think Appellant was intoxicated at that time.
II. DISCUSSION
            In Issue Nos. One through Three, Appellant asserts that the trial court violated the State and
Federal Constitutions by refusing to allow her to fully confront and cross-examine State’s witness
Myra Elder and by limiting her cross-examination merely to arrest warrants and convictions.


 Prior
to the commencement of the voir dire examination, Appellant stated to the court that Elder had two
outstanding arrest warrants. The court responded that if that were so, she would be arrested after her
testimony. The court also stated that Appellant could impeach Elder by questioning her about
pending arrest warrants or whether she was on probation. The court went on to state that Appellant
could not question Elder about the details of the alleged criminal offenses, as she had not been
convicted of those offenses. Counsel for the State stated to the court that Appellant’s counsel had
told him, several months before trial, that the pending arrest warrants existed. Counsel stated that
he had looked for any such warrants under Elder’s maiden name. The court instructed the State’s
counsel to inquire under other names that Elder may have used. Later in the same discussion, it was
determined that Elder had two outstanding warrants for her arrest.
            During Elder’s testimony at trial, Appellant inquired of her whether she was aware that there
were two warrants for her arrest. She stated that her attorney had advised her that there were no
outstanding warrants. Over the State’s objection, the court allowed Appellant to cross-examine
Elder about the current charges. Appellant showed Elder an indictment that issued on December 8,
2004. Elder responded that her attorney was taking care of the matter and that she could not speak
about it without representation. The court interjected in agreement, stating that Appellant could not
go into the details of the offense. Appellant questioned Elder regarding whether it was her
understanding that her attorney was taking care of the charges and that there were no warrants out
for her arrest. She responded that these questions should be directed to her attorney. Appellant
asked whether she knew she could be arrested at the finish of her testimony, and she stated that she
was under the impression that her attorney had taken care of the charges against her. She stated that
she was not charged.
            Elder was then asked whether she was aware of an arrest warrant dated December 31, 1999,
for theft of a check. The State’s objection was sustained and the court ruled that Appellant could
not delve into the details of the offense, due to Elder’s Fifth Amendment right against self-incrimination. Upon further questioning, Elder stated that she knew of the warrant, but that her
attorney was taking care of it. She believed that the indictment and the arrest warrants were all
generated out of the same charge.
            Appellant asked Elder whether she had discussed her arrest warrants with the State’s counsel
and whether any deal had been struck with the State in order to secure her testimony. She responded
negatively. She gave the same response during redirect examination by the State.
            Elder testified that she lived in Albuquerque, New Mexico from 1996 to 1999. In a voir dire
hearing outside the presence of the jury, she stated that she had been arrested on a shoplifting charge
in 1997 in Albuquerque, but that she was not convicted. The court ruled that since she had not been
convicted, the question would not be allowed in front of the jury.
            When Elder finished testifying, the court informed her that there were two outstanding
warrants for her arrest and that she would be taken into custody.
            The Confrontation Clause of the Sixth Amendment to the United States Constitution
guarantees an accused’s right “to be confronted with the witnesses against him.” U.S. Const.
amend. VI; Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); see also Tex. Const. art. I, § 10;
Carroll v. State, 916 S.W.2d 494, 496-97 (Tex.Crim.App. 1996). This right exists in order to allow
a defendant to cross-examine a witness, the principal means of testing a witness’s credibility. Shelby
v. State, 819 S.W.2d 544, 546 (Tex.Crim.App. 1991).
            A defendant may cross-examine a witness on any subject that is “reasonably calculated to
expose a motive, bias or interest for the witness to testify.” Carroll, 916 S.W.2d at 497; Miller v.
State, 741 S.W.2d 382, 389 (Tex.Crim.App. 1987). “[T]he exposure of a witness’ motivation in
testifying is a proper and important function of the constitutionally protected right of
cross-examination.” Davis v. Alaska, 415 U.S. 308, 316-17 (1974); Maxwell v. State, 48 S.W.3d
196, 199 (Tex.Crim.App. 2001).
            Evidence of “unadjudicated crimes could be admissible to show a witness’s bias or interest
in the particular case.” Moreno v. State, 22 S.W.3d 482, 486 (Tex.Crim.App. 1999). Specifically,
evidence that the witness is subject to a criminal charge or is on probation can be used to show bias
or interest. Id. The trial court, however, may limit the scope of cross-examination to avoid
harassment, prejudice, confusion of the issues, endangering the witness, and injection of cumulative
or collateral evidence. Van Arsdall, 475 U.S. at 679.
            The proponent of evidence purporting to show bias or interest must show that the evidence
is relevant. Carpenter v. State, 979 S.W.2d 633, 634 (Tex.Crim.App. 1998). The proponent does
this by showing that a nexus, or causal connection, exists between the witness’s testimony and the
witness’s potential motive to testify for the other party. Woods v. State, 152 S.W.3d 105, 111
(Tex.Crim.App. 2004). Texas courts have found a nexus where the witness had been indicted or is
on probation. Id.; Maxwell, 48 S.W.3d at 199; Evans v. State, 519 S.W.2d 868, 873 (Tex.Crim.App.
1975).
            Here, it was demonstrated that Elder had an indictment pending against her. However,
Appellant’s specific contention on appeal appears to be that the court failed to allow her to delve into
the details of the offense or offenses. Clearly, the court allowed Appellant to make an inquiry
concerning the existence of the pending charges; however, the court prevented her from going into
the details of the offenses. A trial court should allow great latitude in the cross-examination of a
witness concerning possible bias, prejudice, or self-interested motives to falsify testimony. 
Chambers v. State, 866 S.W.2d 9, 26 (Tex.Crim.App. 1993), cert. denied, 511 U.S. 1100 (1994);
Gutierrez v. State, 681 S.W.2d 698, 706 (Tex.App.--Houston [14th Dist.] 1984, pet. ref’d). The
proponent of the cross-examination bears the burden of showing the relevance of the evidence to the
issue of bias. Chambers, 866 S.W.2d at 26-27. The extent to which a witness may be
cross-examined for the showing of bias rests within the sound discretion of the trial judge, who must
balance the probative value of the evidence against its prejudicial risks, such as undue prejudice,
embarrassment, harassment, confusion of the issues, and undue delay. Id. at 27. The trial court’s
determination may not be reversed unless the Appellant shows a clear abuse of discretion. Id.
            The trial court in this case did not abuse its discretion in not allowing Appellant to
cross-examine Elder about the details of her prior unadjudicated offenses since Appellant has failed
to explain in the record or on appeal what details of Elder’s unadjudicated offenses were relevant
to the issues of her having some fear or hope of favorable treatment from the State.
            Next, Appellant asserts that Elder’s denials that any charges were pending against her
“opened the door” to full cross-examination about the pending charges. If the testimony of a witness
during direct examination “opens the door” or leaves a false impression with the jury as to the extent
of the witness’s prior arrests, convictions, charges, or trouble with the police, opposing counsel may
introduce what would have otherwise been irrelevant evidence about the witness’s past criminal
history. See Delk v. State, 855 S.W.2d 700, 704-05 (Tex.Crim.App. 1993); Reyna v. State, 99
S.W.3d 344, 349 (Tex.App.--Fort Worth 2003, pet. ref’d). The applicability of this rule is not
limited to final convictions, Reyna, 99 S.W.3d at 349; it also applies, for example, when the witness
purports to detail past convictions, but leaves an impression that there are no others. Ochoa v. State,
481 S.W.2d 847, 850 (Tex.Crim.App. 1972). Once the witness’s response triggers the rule, opposing
counsel may introduce what would otherwise have been irrelevant evidence about the witness’s past
criminal history. See Delk, 855 S.W.2d at 704-05; Reyna, 99 S.W.3d at 349. The past criminal
history becomes relevant, and thus admissible, because the witness has created a false impression
about his past conduct which “opens the door” for the opponent to expose the false impression. See
Delk, 855 S.W.2d at 704.
            The State maintains that no false impression was left with the jury because Elder did not deny
the existence of the warrants; rather, she stated that her attorney had taken care of them. However,
Elder did state at one point that there were no charges when there were, in fact, two outstanding
warrants for her arrest. Certainly, this could have left a false impression. Once again, our
consideration is hampered by the fact that the record does not indicate what further questions
Appellant would have asked Elder to ameliorate the false impression. In any case, even if the issues
were squarely before us in the prior discussion and regarding this contention, we find the error, if
any, to have been harmless.
            Appellate review of whether error is harmful is governed by Tex.R.App.P. 44.2(a), which
provides that we must reverse a judgment of conviction or punishment, unless the reviewing court
determines beyond a reasonable doubt that the error did not contribute to the conviction or
punishment. Under Rule 44.2(a), the State carries the burden to show beyond a reasonable doubt
that the error made no contribution to the verdict. Crosson v. State, 36 S.W.3d 642, 645
(Tex.App.--Houston [1st Dist.] 2000, no pet.). In a Confrontation Clause case, we first assume that
the damaging potential of the cross-examination was fully realized. Shelby, 819 S.W.2d at 547. The
reviewing court must then consider five factors: (1) The importance of the witness’s testimony in
the prosecution of the case; (2) whether the testimony was cumulative; (3) the presence or absence
of evidence corroborating or contradicting the testimony of the witness on material points; (4) the
extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution’s
case. Id.
            In the present case, Appellant maintains that Elder’s testimony was crucial to the State’s case
in that she was the only witness to place Appellant at the wheel of the vehicle, and she was the only
witness to indicate that her behavior was caused by any medical condition other than intoxication. 
However, Appellant herself testified that she drove the vehicle. Elder was likewise not the only
witness to testify regarding Appellant’s medical condition. Firefighter Romero stated that Appellant
did not show any signs of seizure or stroke or any diabetic condition. Furthermore, there was an
abundance of evidence that Appellant was intoxicated. Certainly, Elder’s testimony was cumulative. 
            While Appellant was not permitted to go into the details of the unadjudicated offenses, cross-examination was allowed regarding the existence of the outstanding warrants. At one point in her
testimony, Elder did state that her attorney was taking care of any warrants, so there was not a
complete absence of evidence before the jury concerning the warrants.
            Finally, the State’s case was strong; Appellant conceded she was driving and there was an
abundance of evidence that she was intoxicated. Her defensive evidence was not so cogent and
compelling as to cause weakness in the State’s case. We find the error, if any, to be harmless. 
Accordingly, Issue Nos. One through Three are overruled.
            In Issue Nos. Five and Six, Appellant contends that the State deprived her of due process by
its failure to disclose the criminal record of State’s witness Elder in violation of the Federal and State
Constitutions. Months before trial, the court had issued a discovery order which instructed the State
to inform the defense of any prior criminal record that any of the State’s witnesses might have. 
Specifically, the order required the State to furnish all of its witnesses’ prior felony and misdemeanor
convictions of moral turpitude, and all arrests and charging instruments. Prior to trial, Appellant
stated that Elder had two outstanding arrest warrants. The State had looked for warrants under
Elder’s maiden name and a married name. The court ordered the State to look for warrants under
Elder’s other name, Eastman. The record does not indicate whether this was done.
            Under the Due Process Clause of the Fourteenth Amendment, a prosecutor has an affirmative
duty to turn over material, exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 86 (1963); Ex
parte Kimes, 872 S.W.2d 700, 702 (Tex.Crim.App. 1993). Impeachment evidence is included
within the ambit of the term “exculpatory evidence.” United States v. Bagley, 473 U.S. 667, 676
(1985). A due process violation occurs if a prosecutor (1) fails to disclose evidence, (2) favorable
to the accused, (3) which creates a reasonable probability of a different outcome. Wyatt v. State, 23
S.W.3d 18, 27 (Tex.Crim.App. 2000).
            The rule of Brady v. Maryland applies only to information known to the prosecution, but
unknown to the defense. United States v. Agurs, 427 U.S. 97, 103 (1976); Jackson v. State, 552
S.W.2d 798, 804 (Tex.Crim.App. 1976); Garcia v. State, No. 08-02-00085-CR, 2004 WL 1895184,
at *9 (Tex.App.--El Paso Aug. 25, 2004, pet. ref’d) (mem. op., not designated for publication). Here,
it appears that Appellant knew of the offenses, so Brady does not apply.
            Furthermore, if the evidence is not revealed prior to trial, but is provided to the defense in
time for the accused to use it in her defense, no Brady violation has occurred. Little v. State, 991
S.W.2d 864, 866 (Tex.Crim.App. 1999); Garcia v. State, No. 08-02-00085-CR, 2004 WL 1895184,
at *10-11 (Tex.App.--El Paso Aug. 25, 2004, pet. ref’d) (mem. op., not designated for publication).
            Here, Appellant was able to cross-examine Elder regarding the outstanding warrants and
whether she had entered into any agreement with the State for favorable treatment in light of her
testimony. While her answers were couched in terms of her lawyer’s advice and actions, the matters
concerning her legal difficulties were before the jury. We find that no Brady violation occurred. 
Issue Nos. Five and Six are overruled.
            In Issue Nos. Seven and Eight, Appellant argues that she was deprived of due process by the
State’s failure to correct the false testimony of the State’s witness Elder in violation of the Federal
and State Constitutions. A prosecutor has a duty to correct known false evidence, and this duty is
constitutional in dimension. Duggan v. State, 778 S.W.2d 465, 468 (Tex.Crim.App. 1989). The
question is not whether the prosecutor actually knew the evidence was false, it is enough that he
should have recognized the misleading nature of the evidence. Id. Such error is subject to a harm
analysis. Id. at 469.
            In this instance, while the prosecutor should have had a better grasp of his obligations
regarding the disclosure of the evidence and of the existence of the two outstanding warrants, it is
not a matter in which there was a total failure to disclose the information nor was there a total denial
by the witness, for which the prosecutor was required to correct a false impression. Furthermore,
even if error occurred, we find it to have been harmless.
            The Texas Rules of Appellate Procedure require reversal in constitutional error cases, “unless
the court determines beyond a reasonable doubt that the error did not contribute to the conviction
or punishment.” See Tex.R.App.P. 44.2(a). In examining the record to assess harm, we consider: 
(1) The source and nature of the error; (2) the extent to which the State emphasized it; (3) the weight
a juror would probably have placed on it; and (4) whether declaring the error harmless would
encourage the State to repeat it with impunity. See Dinkins v. State, 894 S.W.2d 330, 356
(Tex.Crim.App. 1995).
            Here, the error was not emphasized by the State. In fact, during closing argument, the
prosecutor stated that Appellant had warrants and that she would get her day in court, although the
prosecutor did urge that Elder’s testimony was still reliable. Furthermore, as most of Elder’s
testimony was cumulative of the other testimony at trial, including that of the Appellant herself, we
do not perceive that the jurors placed much weight on it. We see no reason why finding the error
harmless would encourage the State to repeat the mistake with impunity. Issue Nos. Seven and Eight
are overruled.
            We affirm, as reformed, the judgment of the trial court.
 
                                                                        KENNETH R. CARR, Justice
January 25, 2007

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)