NUMBER 13-06-269-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


SABIN TRENT WRIGHT, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the County Court at Law No. 2 


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 A jury found appellant, Sabin Trent Wright, guilty of resisting arrest. (1) The trial court
assessed punishment at one year confinement and a $500.00 fine, suspended the
sentence, and placed appellant on community supervision for fourteen months. In three
issues, appellant contends: (1) the trial court erred in refusing to submit jury instructions
on the defensive issues of justification, (2) greater force than necessary, (3) and necessity; (4) (2)
the trial court erred in admitting evidence of a prior arrest; and (3) the evidence is legally
insufficient to support his conviction. We affirm.

I. Background


 Paul Campbell, Chief of Police for the City of Palm Valley, testified that he observed
appellant's pickup "peeling out" of a convenience store parking lot and speeding through
a residential neighborhood. Officer Campbell activated his emergency lights and followed
the truck to appellant's house. According to the officer, appellant "bailed out," leaving the
truck door open, and ran toward his front door, ignoring the officer's instructions to stop. 
When Officer Campbell confronted appellant at the door, he smelled a strong odor of
alcohol on appellant's breath. According to the officer, appellant was "very hostile, very
belligerent," refused to answer any questions, and kept shouting obscenities and threats. 
Officer Campbell attempted to utilize an "escort position" to escort appellant to the police
vehicle, but appellant kept pulling away. The officer then used a "take down technique" to
restrain appellant. A second officer, Officer Ed Hayward, arrived and assisted in
restraining and handcuffing appellant. Officer Campbell testified that even after he was
handcuffed, appellant continued to try to get away, kicking, cursing, and threatening the
officers. Officer Campbell testified that appellant refused to take a breathalyzer test. 

 Appellant testified that he did not ever see the overhead lights on Officer Campbell's
vehicle. According to appellant, he was standing by his door, with his hands up in the air, 
when Officers Campbell and Hayward "tackled" him. He denied that he resisted the
officers. Appellant testified that he requested a breathalyzer test and a blood test, but was
given neither. Appellant denied that he was speeding and that he tried to assault the
officers. 

II. Charge Error 


A. Standard of Review and Applicable Law 


 Our first duty in analyzing a jury charge issue is to determine whether error exists. (5)
Then, if we find error, we analyze that error for harm. (6) Properly preserved charge error
requires reversal if the error was "calculated to injure the rights of [the] defendant," which
means no more than that there must be some harm to the accused from the error. (7) In
other words, a properly preserved error will call for reversal as long as the error is not
harmless. (8) In making this determination, "the actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the contested issues and
weight of probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole." (9) 

 It is well settled that an accused has the right to an instruction on any defensive
issue raised by the evidence, whether that evidence is weak or strong, unimpeached or
contradicted, and regardless of what the trial court may or may not think about the
credibility of the evidence. (10) If the evidence, viewed in a favorable light, does not establish
the defensive issue, an instruction is not required. (11)

 All statutory affirmative defenses "justify the defendant's admitted participation in the
act itself." (12) Chapter nine of the penal code is entitled, "Justification Excluding Criminal
Responsibility," and includes a list of conduct that the legislature has determined to be
defenses to prosecution. (13) Necessity is a statutory defense that exonerates a person's
otherwise illegal conduct. (14) The justification of necessity is unavailable to actors who do
not admit the conduct that constitutes the charged offense. (15) 

 Self-defense is a justification defense under chapter nine of the penal code. (16) Self-defense is a justification for one's acts, which requires admission that the conduct
occurred. (17) Generally, if a defendant denies all participation in an offense, his argument
does not present evidence of a justification defense. (18) 

 The Texas Legislature has defined certain conduct, including protection of property
under section 9.41 of the Texas Penal Code, to be "justified" in particular situations,
notwithstanding penal laws to the contrary. (19) Section 9.41(a) provides that a person is
justified in using force when and to the extent reasonably necessary to protect his
property. (20) Failure to give an instruction on defense of property is not error where there
was no evidence that appellant had a reasonable belief in the necessity of such force. (21)

B. Analysis 


 At trial, appellant denied that he (1) resisted arrest "at all," (2) attempted to evade
any lawful request by Officer Campbell, or (3) attempted to assault either officer. Appellant
testified that he "was peaceful until [he] was tackled and handcuffed and drug out into the
street." Appellant admitted he was a "little bit" upset, but specifically denied "pushing and
pulling away" from the officers. Appellant testified that when Officer Campbell grabbed his
arms, he "just went with it." We conclude appellant denied the conduct constituting the
charged offense (resisting arrest), and was therefore not entitled to a defensive instruction
on either the defense of necessity or self-defense. (22) Similarly, we conclude there was no
evidence in the record suggesting that appellant could reasonably believe that force was
necessary to protect his home or himself. (23) Appellant denied the use of any force. We
hold the trial court did not err in refusing to submit appellant's requested instructions. We
overrule appellant's first issue.

 III. Evidence of Prior Arrest 


 In his second issue, appellant complains the trial court erred in allowing the State
to question him regarding a prior arrest for terroristic threat. The State argues appellant
"opened the door" for such impeachment evidence by testifying that he had "never caused
a problem" and "never had a problem out there before."

A. Standard of Review and Applicable Law 


 We review a trial court's evidentiary rulings under an abuse-of-discretion standard
and will not disturb the trial court's ruling unless it falls outside the zone of reasonable
disagreement. (24) If there is evidence supporting the trial court's decision to admit evidence,
there is no abuse and the appellate court must defer to that decision. (25) Even when the trial
judge gives the wrong reason for his decision, if the decision is correct on any theory of law
applicable to the case, it will be sustained. (26)

 As a general rule, specific acts of misconduct may not be introduced to impeach a
party or witness. (27) However, if the testimony of a witness during direct examination "opens
the door" or leaves a false impression with the jury as to the extent of the witness's prior
arrests, convictions, charges, or trouble with the police, opposing counsel may introduce
what would have otherwise been irrelevant evidence about the witness's past criminal
history. (28) The applicability of this rule is not limited to final convictions. (29) It also applies,
for example, when the witness purports to detail past convictions, but leaves an impression
that there are no others. (30) Once the witness's response triggers the rule, opposing counsel
may introduce what would otherwise have been irrelevant evidence about the witness's
past criminal history. (31) The past criminal history becomes relevant, and thus admissible,
because the witness has created a false impression about his past conduct which "opens
the door" for the opponent to expose the false impression. (32) Considering the applicability
of the false impression exception to the general prohibition against the introduction of
extraneous offenses, we focus first on the defendant's answer in relation to the question
asked, and whether or not it is responsive. (33) Second, we examine how broadly the
question that is asked can be interpreted, focusing on the intonation of the question, and
its relation to the major substantive issue in the trial. (34)

B. Analysis


 On direct examination, appellant testified as follows:

Q [Appellant's counsel]: Now, when Chief Campbell asked you to come off
of your property, did you believe that you had committed any crime?


A [Appellant]: No, I didn't believe I did at all. 


Q: Were you trying to--what were you trying to do in your conversations with
Chief Campbell?


A: From the tone of his voice, he was mad about something.


Q: Well, why would he be mad at you, Sabin?


A: I don't know. I've never caused a problem. I mean, I've lived out
there--I've never had a problem out there before. I mean . . .


Q: Are--are--did the Chief ever--well, you've never talked to the Chief
before, correct?


A: Huh-uh. No, sir. I'm sorry about that. 


 On cross-examination, the prosecutor approached the bench and argued that
appellant's statement that he "never had a problem out there before" "opened the door" to 
evidence of appellant's prior arrests. Outside the presence of the jury, the State argued 
appellant's statement "opened the door" because he had been arrested repeatedly in the
area. The State argued it should be allowed to admit evidence of appellant's prior arrests
in Palm Valley and neighboring towns. The trial court ruled that the State could question
appellant on any arrests in Palm Valley because appellant "opened the door to that," but
denied the State's request to include arrests in any neighboring towns. 

 On cross-examination, the State asked appellant to explain his statement that he
had "never had a problem out there." Appellant denied he had ever been arrested in Palm
Valley. The State asked specifically if appellant had been arrested for the offense of
terroristic threat. Appellant responded that he had received a letter from the district
attorney's office that said he "need[ed] to come to court over it," but denied that he had
been arrested. After appellant denied several times that he had been arrested in Palm
Valley, the State requested a recess to obtain the documentation "for impeachment
purposes." Appellant's counsel stated, "[w]e need to move on with this case, Judge." The
trial court responded, "Overruled. Overruled. Let's finish it." No recess to "obtain the
documentation" was granted. (35)

 In examining appellant's response to the question he was asked, we are unable to
determine whether the question referred only to the incident at issue or whether it referred
more generally to whether Officer Campbell had other reasons to be "mad" at appellant. 
Appellant's response to the following question, that he had never talked to Officer
Campbell before, could have led the jury to conclude that he had never been arrested in
Palm Valley. After reviewing the record and the overall tenor of appellant's testimony, we 
conclude that the trial court could have found that appellant left a false impression with the
jury. (36) We hold the trial court did not abuse its discretion in ruling that appellant had
"opened the door" to the admission of impeachment evidence. (37) We overrule appellant's
second issue.

IV. Sufficiency of the Evidence


 In his third issue, appellant contends the evidence is legally insufficient to support
his conviction. Specifically, appellant contends Officer Campbell's testimony that appellant
was attempting to "pull away" is insufficient to establish that he was using force against the
officer. 

A. Standard of Review and Applicable Law 


 When reviewing the legal sufficiency of the evidence to support a conviction, we
consider all the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. (38) This standard gives "full play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts." (39) In this review, we do not reevaluate the
weight and credibility of the evidence; rather, we act only to ensure that the jury reached
a rational decision. (40)

 Sufficiency of the evidence is measured against the elements of the offense as
defined by the hypothetically correct jury charge. (41) Such a charge would accurately set out
the law, would be authorized by the indictment, and would not unnecessarily increase the
State's burden of proof. (42)

 A person commits the offense of resisting arrest if he intentionally prevents or
obstructs a person he knows is a peace officer from effecting an arrest by using force
against the peace officer. (43) 

B. Analysis


 Appellant argues that Officer Campbell's testimony establishes only that he was
trying to "shake off" the officer's grip and "pull away" from him. He contends that Officer
Hayward similarly testified that appellant was trying to "pull away" from the officers. Based
on our review of the record, we disagree. 

 Officer Campbell testified that because appellant refused to cooperate, despite
several warnings, he "didn't have any other choice but to arrest him." Officer Campbell
testified that appellant was "just continually pulling away, using force to push and pull away
from me." After Officer Campbell used a "take down" technique on appellant, appellant
continued "thrashing left and right and trying to get away," "trying to swing at [the officers]." 
After the officers handcuffed appellant and got him to his feet, they tried to get him to the
police car, but appellant continued "thrashing back and forth." Officer Campbell further
described appellant's conduct: 

[Officer Campbell]: All along the way to the police car--from about in front
of the police car to the side where we wanted to put him, he was still pulling
away from us, cussing at us, threatening to kill us and this sort of thing. Still
pulling away, trying to get away, trying to kick at us. And we got him to the
back of the police car, opened up the back right of the police car, he would
not get into the police car.


Q [State]: Was he pushing?


A: Pushing, pulling, trying to kick, everything. 


 Officer Campbell's testimony that appellant "kicked at" the officers is sufficient to
constitute the use of force required under penal code section 38.03(a). (44) Moreover, this
Court has held that a defendant's open-handed push away from an officer is sufficient to
show that the defendant resisted arrest by using force against the arresting officer. (45) We
conclude that, when viewed in the light most favorable to the verdict, the above evidence
is sufficient to support a conviction for resisting arrest. (46) We overrule appellant's third
issue.

V. Conclusion 


 We affirm the trial court's judgment. 


 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 30th day of August, 2007. 

1. See Tex. Penal Code Ann. § 38.03(a) (Vernon 2003). Appellant was also charged with driving while
intoxicated and evading arrest, but was acquitted on those charges. 
2. Appellant cites section 9.41(a) of the Texas Penal Code, which provides:


A person in lawful possession of land or tangible, movable property is justified in using force
against another when and to the degree the actor reasonably believes the force is
immediately necessary to prevent or terminate the other's trespass on the land or unlawful
interference with the property.


Tex. Penal Code Ann. § 9.41(a) (Vernon 2003).
3. Section 9.31(c) of the Texas Penal Code defines self-defense in the context of resisting arrest:


(c) The use of force to resist an arrest or search is justified:


(1) if, before the actor offers any resistance, the peace officer (or person acting at his
direction) uses or attempts to use greater force than necessary to make the arrest or search;
and


(2) when and to the degree the actor reasonably believes the force is immediately necessary
to protect himself against the peace officer's (or other person's) use or attempted use of
greater force than necessary.


Tex. Penal Code Ann. § 9.31(c) (Vernon 2003).
4. Section 9.22 of the Texas Penal Code defines the defense of necessity:


Conduct is justified if:


(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent
harm;


(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary
standards of reasonableness, the harm sought to be prevented by the law proscribing the
conduct; and


(3) a legislative purpose to exclude the justification claimed for the conduct does not
otherwise plainly appear.


Tex. Penal Code Ann. § 9.22 (Vernon 2003). 
5. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc) (citing Hutch v. State,
922 S.W.2d 166, 170 (Tex. Crim. App. 1996)).
6. Id.; see Posey v. State, 966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998) (en banc). 
7. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); see also Abdnor v. State, 871 S.W.2d 726,
731-32 (Tex. Crim. App. 1994); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). 
8. Almanza, 686 S.W.2d at 171. 
9. Id.; see also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).
10. Bowen v. State; 162 S.W.3d 226, 229 (Tex. Crim. App. 2005); Granger v. State, 3 S.W.3d 36, 38
(Tex. Crim. App. 1999).
11. Granger, 3 S.W.3d at 38; Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984). 
12. East v. State, 76 S.W.3d 736, 738 (Tex. App.-Waco 2002, no pet.) (quoting Sanders v. State, 707
S.W.2d 78, 81 (Tex. Crim. App. 1986), limited by Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim. App.
1990)).
13. Willis, 790 S.W.2d at 315 n.5 (citing Tex. Penal Code Ann. § 9.02 (Vernon 2003) ("It is a defense
to prosecution that the conduct in question is justified under this chapter.")).
14. Young v. State, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999).
15. See Bowen, 162 S.W.3d at 230 (noting that appellant satisfied judicially imposed prerequisite to
requesting a necessity instruction by admitting to commission of the offense); Ex parte Nailor, 149 S.W.3d
125, 133 (Tex. Crim. App. 2004); Young, 991 S.W.2d at 839 ("To raise necessity, Appellant must admit he
committed the offense and then offer necessity as a justification."); Ford v. State, 112 S.W.3d 788, 793 (Tex.
App.-Houston [14th Dist.] 2003, no pet.).
16. See Tex. Penal Code Ann. § 9.31 (Vernon 2003).
17. Ford, 112 S.W.3d at 793; East, 76 S.W.3d at 738 ("To rely on 'self-defense,' the defendant must
first admit committing the conduct which forms the basis of the indictment."). 
18. We note that in certain circumstances, not applicable here, a defendant may be entitled to an
instruction on justification without admitting the offense. See Golden v. State, 851 S.W.2d 291, 295 (Tex.
Crim. App. 1993) (en banc); Willis, 790 S.W.2d at 314 (noting that a defendant may be entitled to a defensive
instruction where he merely negates an element of an offense, but does not negate the entire offense); see
also Hubbard v. State, 133 S.W.3d 797, 801-02 (Tex. App.-Texarkana 2004, pet. ref'd) (noting that a
defendant may be entitled to a defensive instruction where he admits the conduct underlying the offense, but
does not admit every statutory element of the offense); East, 76 S.W.3d at 738 (noting that court of criminal
appeals has explained that "'admitting the conduct' does not always mean admitting the commission of every
statutory element of the offense."). 
19. See Tex. Penal Code Ann. § 9.02 (Vernon 2003).
20. Tex. Penal Code Ann. § 9.41(a) (Vernon 2003); see McDonald v. State, 761 S.W.2d 56, 60 (Tex.
App.-Houston [14th Dist.] 1988, pet. ref'd). 
21. McDonald,761 S.W.2d at 60. 
22. See Ex parte Nailor, 149 S.W.3d at 133; Ford, 112 S.W.3d at 793; East, 76 S.W.3d at 738. 
23. See McDonald,761 S.W.2d at 60. 
24. Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); Mumphrey v. State, 155 S.W.3d
651, 660 (Tex. App.-Texarkana 2005, pet. ref'd) (citing Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim.
App. 1996)). 
25. Osbourn, 92 S.W.3d at 538.
26. Id. 
27. See Prescott v. State, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988).
28. See Delk v. State, 855 S.W.2d 700, 704-05 (Tex. Crim. App. 1993); Reyna v. State, 99 S.W.3d 344,
349 (Tex. App.-Fort Worth 2003, pet. ref'd). 
29. Reyna, 99 S.W.3d at 349.
30. Ochoa v. State, 481 S.W.2d 847, 850 (Tex. Crim. App. 1972). 
31. See Delk, 855 S.W.2d at 704-05; Reyna, 99 S.W.3d at 349.
32. See Delk, 855 S.W.2d at 704.
33. See id. at 704.
34. See id.
35. In his brief, appellant also complains that "the State failed to introduce the arrest at all." We note
that by urging the trial court to "move on with this case," appellant waived any complaint regarding the State's
failure to obtain documentation of any arrest. 
36. See Delk, 855 S.W.2d at 704. 
37. See Osbourn, 92 S.W.3d at 537.
38. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim.
App. 2006); Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005); Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004).
39. Jackson, 443 U.S. at 319.
40. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) (en banc); Ozuna v. State, 199 S.W.3d
601, 604 (Tex. App.-Corpus Christi 2006, no pet.).
41. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).
42. See id. 
43. See Tex. Penal Code Ann. § 38.03(a) (Vernon 2003). 
44. See Halliburton v. State, 80 S.W.3d 309, 313 (Tex. App.-Fort Worth 2002, no pet.) (holding that
"kicking at" constitutes the use of force required for resisting arrest). 
45. See Furch v. State, No. 13-01-815-CR, 2002 Tex. App. LEXIS 8804, at *5 (Tex. App.-Corpus
Christi Dec. 12, 2002, no pet.) (mem. op., not designated for publication); Leos v. State, 880 S.W.2d 180, 182
(Tex. App.-Corpus Christi 1994, no pet.) (holding a forceful shove directed at officer sufficient use of force
to support resisting arrest); Mayfield v. State, 758 S.W.2d 371, 373 (Tex. App.-Amarillo 1988, no pet.) (using
elbows and shoulder to shove arresting officer out of moving car is sufficient force). 
46. See Powell, 194 S.W.3d at 506.