02-09-334-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00334-CR

 

 


 
 
 Ogden James
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
158th District Court OF Denton
COUNTY

------------

OPINION

------------

I.  Introduction

          Appellant Ogden James appeals his
conviction for assault–family violence. 
In two issues, James argues that the trial court erred by admitting a
police officer’s improper expert opinion testimony and by prohibiting him from
questioning the complainant about a prior incident in which she allegedly
attacked him.  We will affirm.

II.  Factual and
Procedural Background

          Ogden James and Maggie Bryan had a
dating relationship and lived together.  On March 20, 2009, Maggie was sitting on her
porch when James, who was mad that he had to move out, kicked her in her back.  Maggie fell off the porch and struggled to
prevent James from hitting her.

          At about 10:15 p.m. that night, Officer
Jamie Fletcher responded to a domestic disturbance call at Maggie’s residence.  James was standing in the front yard when
Officer Fletcher arrived.  He told Officer
Fletcher that Maggie had accused him of sleeping with another woman and had
attacked him.  Officer Fletcher noticed
that James had a couple of scratches on his face.  She went inside and found Maggie, who was “kind
of shaking” and had been crying.  Maggie
told Officer Fletcher that James had assaulted her; she said James had choked
her, and she pointed out a small cut on her leg and a mark on one of her arms
where she said James had grabbed her.[1]  Officer Fletcher noticed that both James and Maggie
had been drinking and that Maggie was more intoxicated than James, but that both
were at the “lower end” of the intoxication scale.  Concluding that both James and Maggie were
“aggressors” in the incident and that neither one had injuries that were any
worse than the other’s injuries, Officer Fletcher decided not to arrest either one
but to try to separate them to prevent any further arguments or violence.[2]  James agreed to leave, and Officer Fletcher
advised him that “if you come back and something happens and there’s another
altercation, somebody is going to go to jail.”  Maggie went to bed.

          Sometime later that night, James burst
through Maggie’s front door and attacked her, hitting her multiple times on her
face and head with his fist.  Terrified, Maggie
tried to call 911 in the midst of the assault.

          At about 1:42 a.m., Officer Fletcher
received a second call regarding Maggie’s residence and was the first officer
to respond.  She approached the house and
heard yelling, screaming, and “banging around” from inside; it sounded to
Officer Fletcher like someone or something was getting thrown around.  After backup arrived, Officer Fletcher knocked
on the door.  Maggie opened the door with
James right behind her.  Officer Fletcher
observed that Maggie was under the strain of some kind of trauma that she had
just experienced and that she looked different than she did earlier in the
evening when Officer Fletcher responded to the first call; her face was covered
in blood, her left eye was “completely bruised and swollen shut,” she had blood
coming out of her eye, and she had a cut on her swollen face.  Crying and very upset, Maggie told Officer
Fletcher, “he did this to me,” which Officer Fletcher interpreted to be in reference
to James.  Officer Fletcher called an
ambulance that transported Maggie to the hospital.  Maggie’s injuries included a one-inch
laceration under her left eye and multiple bruises and abrasions all over her
body and face.

          James told Officer Fletcher that Maggie
had called or texted him to come back to the house after he had left, that he
was worried she would do something to his property, that she attacked him when
he returned, and that he had acted in self-defense.  Officer Fletcher examined James for new
injuries, but she did not notice that he had suffered any injuries that he did
not have when she saw him during the first call earlier in the evening.  Officer Fletcher arrested James, and her
backup officer took him to jail.

          A jury convicted James of
assault–family violence and sentenced him to twenty years’ confinement.  James appeals.

III.  Objections to
Officer Fletcher’s Testimony

          A.      Testimony
About Maggie’s Condition

 

          In the first of two arguments James raises
in his first issue, he contends that the trial court abused its discretion by
permitting Officer Fletcher to explain that she called an ambulance for Maggie because
Maggie had the “crap” beat out of her.  The
following exchange occurred at trial:

          Q.    And
tell me why you did that.  Why did you
call for an ambulance?

 

          A.    Because
she had just had the crap beat out of her and she needed immediate medical
attention.

 

          [Defense Counsel]:     Objection, Your Honor.  She testified she thought she needed medical
attention, but “he beat the crap out of her” is speculation on her part.  It’s a characterization.

 

          THE WITNESS:     I used to be an EMT, so I do have
medical training.

 

          THE
COURT:      What is your legal objection?

          [Defense Counsel]:     Asking for a ruling on the objection.  I believe it’s a statement of opinion on her
part, and also, it’s something she’s not qualified to testify to.  She can state that she thought she needed
medical attention; I don’t have a problem with that.  But she called the medic.

 

                   THE COURT:      Overruled.

James
argues that Officer Fletcher’s testimony that Maggie “had just had the crap
beat out of her and she needed immediate medical attention” (1) was an
improper causation or medical opinion because “there were no qualifications
given by Officer Fletcher prior to her opinion that [James] beat the ‘crap’ out
of the victim” and (2) amounted to a legal conclusion because it “dealt
with the ultimate issue of whether [James] assaulted the alleged victim.”

          We review a trial court’s decision to
admit or exclude evidence under an abuse of discretion standard.  Shuffield v. State,
189 S.W.3d 782, 793 (Tex. Crim. App.), cert.
denied, 549 U.S. 1056 (2006); Montgomery
v. State, 810 S.W.2d 372, 379 (Tex. Crim. App. 1991) (op. on reh’g).  We reverse only when the trial court’s
decision was so clearly wrong as to fall outside the zone of reasonable
disagreement.  See Oprean v. State, 201
S.W.3d 724, 726 (Tex. Crim. App. 2006). 
We uphold the trial court’s ruling if it is reasonably supported by the
record and correct under any theory of law applicable to the case.  See Willover v. State, 70 S.W.3d 841,
845 (Tex. Crim. App. 2002).

          Rule 701 covers the testimony of a
“traditional” witness—one who personally witnessed or participated in the
events about which he is testifying.  Ellison v. State, 201 S.W.3d 714, 723
(Tex. Crim. App. 2006) (citing Osbourn v. State,
92 S.W.3d 531, 535 (Tex. Crim. App. 2002)). 
It provides that such a “witness’ testimony in the form of opinions or
inferences is limited to those opinions or inferences which are (a) rationally
based on the perception of the witness and (b) helpful to a clear
understanding of the witness’ testimony or the determination of a fact in
issue.”  Tex. R. Evid. 701; Ex parte White, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).  The requirement that an opinion be rationally
based on the perception of the witness is composed of two parts:  (1) the witness must establish personal
knowledge of the events from which his opinion is drawn and (2) the
opinion drawn must be rationally based on that knowledge.  Fairow v. State, 943 S.W.2d 895, 898 (Tex.
Crim. App. 1997); Scott v. State, 222
S.W.3d 820, 828 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

          In this case, Officer Fletcher
testified that she responded to two separate disturbance calls at Maggie’s
residence.  At the first call, Maggie
told Officer Fletcher that James had assaulted her; she said that James had
choked her, and she pointed out a small cut on her leg and a mark on one of her
arms where she said James had grabbed her.  Officer Fletcher observed that Maggie was
“kind of shaking” and had been crying.

          At the second call, before knocking on
the front door, Officer Fletcher heard yelling, screaming, and “banging around”
from inside Maggie’s house.  She
testified that it sounded like someone or something was getting thrown
around.  When Maggie opened the front
door, Officer Fletcher observed that Maggie looked different than she did at
the first call—her face was covered in blood, her left eye was “completely
bruised and swollen shut,” she had blood coming out of her eye, and she had a
cut on her swollen face.  Maggie was also
crying and very upset, and she told Officer Fletcher, “he
did this to me.”  Officer Fletcher
interpreted Maggie’s statement to be in reference to James, who was the only
other person there.

          Officer Fletcher’s opinion that Maggie
“had just had the crap beat out of her” was thus based on and derived from her
cumulative personal knowledge that James and Maggie had a physical altercation
earlier in the evening; that she heard yelling, screaming, and “banging around”
from inside Maggie’s house; that Maggie answered the door with a swollen,
bloody face and a swollen, shut eye that she did not have at the first call;
and that Maggie told her that James “did this.” 
See Fairow, 943 S.W.2d at 898. 
Based on her personal knowledge of these facts, her opinion was also
rational.  See id.  Accordingly, Officer
Fletcher’s opinion that Maggie “had just had the crap beat out of her” was
rationally based on events that she personally perceived during the calls at Maggie’s
residence and, therefore, met rule 701’s criteria that
opinion testimony by a lay witness be based on events that the witness
personally perceived.  See Tex. R. Evid.
701.

          Regarding rule 701’s
other requirement, Officer Fletcher’s opinion was
helpful to the determination of a fact in issue in the case:  whether
James assaulted Maggie.  See id.

          The dissent opines that Officer
Fletcher “had no personal knowledge of what had caused Maggie’s injuries” and
that she “was not stating an opinion. 
She was stating, as a fact, her guess.” 
Dissenting and concurring op. at 4–5.  Besides ignoring the plethora of undisputed facts
demonstrating that Officer Fletcher’s responsive lay opinion was rationally
based on events that she personally perceived during both visits to Maggie’s residence,
the dissent’s characterization of Officer Fletcher’s testimony as merely a
“guess” necessarily carries with it the unlikely factual (and unlikely logical)
deduction that Maggie inflicted her injuries upon herself since only she and
James were present at her residence—an absurd conclusion.

          We hold that the portion of Officer
Fletcher’s testimony that Maggie “had just had the crap beat out of her” was
admissible as a lay opinion under rule of evidence 701 and, therefore, that the
trial court did not abuse its discretion by admitting this objected-to testimony.

          To the extent James complains about
the portion of Officer Fletcher’s testimony opining that Maggie “needed
immediate medical attention,” James failed to preserve this issue for appellate
review because he did not assert an objection to this testimony; instead, he stated
that Officer Fletcher “can state that she thought she needed medical attention;
I don’t have a problem with that.”  See Tex. R. App. P. 33.1(a); Saldano v. State, 70 S.W.3d 873, 889 (Tex.
Crim. App. 2002) (“We have consistently held that the failure to object in a
timely and specific manner during trial forfeits complaints about the admissibility
of evidence.”).

          The dissent cites Ford v. State, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009), and
disagrees that James failed to preserve this argument for appellate review.  Dissenting and concurring op.
at 6.  But Ford is inapposite because it addresses the form an objection must
take to preserve an issue concerning the admission of evidence for appellate review.  In this case, instead of asserting an
objection to Officer Fletcher’s testimony that Maggie needed medical attention,
James did the opposite:  he affirmed that he did not object to that
portion of Officer Fletcher’s testimony. 
The dissent cites no case law—and would be hard pressed to find any—holding
that an affirmative statement that a defendant does not object to the admission of evidence somehow simultaneously
constitutes a preserved-for-appellate-review objection to that same evidence.

          We overrule this part of James’s first
issue.

          B.      Testimony about James’s Self-Defense
Assertion

          In
the second argument of his first issue, James contends that the trial court
abused its discretion by permitting Officer Fletcher to opine on the
truthfulness of James’s assertion at the second disturbance call that he acted
in self-defense.  The relevant line of
questioning proceeded as follows:

          Q.    And
what else did he tell you about the -- the second incident that had happened?

 

                   . . . .

          A.    Oh.  He basically told me that as soon as he got
to the house, he got in there and she immediately began attacking him and --
and fighting with him.

 

          Q.    And did he tell you that he defended
himself?

          A.    He said it was all self-defense.

          Q.    As
someone who was standing there in that room with these people, what was your
reaction to him telling you it was self-defense?

 

          [Defense Counsel]:  Objection, relevance.

          [Prosecutor]:  It’s absolutely relevant, Judge.  She was there.  She’s witnessing this.  She’s entitled to explain to the jury what
she saw and if it made any sense to her.

 

          [Defense Counsel]:  How is her reaction relevant to it?

          THE COURT:  Sustained.

          Q.    (BY
[Prosecutor]) Ma’am, did the defendant’s
claim of self-defense make any sense to you based on what you saw?

 

          [Defense Counsel]:  Objection, Your Honor.  It’s asking for an opinion and a conclusion
based on things that apparently aren’t in evidence at this time.

 

                   THE COURT:  Overruled.

          Q.    (BY
[Prosecutor]) Again, ma’am, did his claim of
self-defense make any sense based on what you observed when you arrived at the
house?

 

                   A.    No, sir.

                   Q.    Why not?  Explain that to
me.

          A.    Because
he had no new injuries on him and Maggie had a black eye, a cut nose, blood all
over her face, bruises on her legs.  And
he did a heck of a job defending himself, if that was
the case.  [Emphasis added.]

 

          The State argues that James’s
objection “was not specific enough to inform the trial judge of what he was
complaining.”  Although James’s objection
was not a model of clarity, we conclude that it was sufficiently specific to
inform the trial court that he objected to Officer Fletcher rendering an
opinion as to the “sense” or validity of James’s assertion at the second
disturbance call that he acted in self-defense. 
See Tex. R. App. P. 33.1(a).

          The authority that James cites does
not support his argument that the trial court abused its discretion by
permitting Officer Fletcher to answer the State’s question inquiring whether James’s
assertion of self-defense at the second disturbance call made “any sense . . .
based on what [she] saw.”  James cites Black v. State for the contention that
“[a] witness is not allowed to give an opinion as to the truthfulness of
witnesses or the truthfulness of a claim of self-defense.”  634 S.W.2d 356, 357–58
(Tex. App.—Dallas 1982, no pet.). 
Black relied in part on the well-settled
rule that a witness may not give an opinion as to whether another witness is
telling the truth, see Ayala v. State,
171 Tex. Crim. 687, 689, 352 S.W.2d 955, 956 (Tex. Crim. App. 1962), in
arriving at its holding that an expert’s testimony concerning a complainant’s
propensity to tell the truth was inadmissible. 
Black, 634
S.W.2d at 357.  Neither the
holding in Ayala nor the holding in Black is applicable to this issue
because Officer Fletcher did not offer her opinion regarding the truthfulness
of another witness’s testimony, nor did she opine on Maggie’s propensity to
tell the truth.  Black is, thus, inapposite.

          James also cites Taylor v. State for the contention that “[a]n officer may not
testify that he or she did not believe the explanation the defendant gave at
the scene of the crime.”  774 S.W.2d 31, 34 (Tex. App.—Houston [14th Dist.] 1989, pet. ref’d).  Taylor was convicted of burglary of a
building.  Id. at 32.  At trial, the State questioned a police
officer about whether he thought appellant’s reason for being in the building
(to get away from mosquitoes) was credible. 
Id. at 34.  The officer responded that he did not think
appellant’s reason was credible.  Id. 
The court of appeals concluded that Taylor’s objection to the State’s
question should have been sustained because “[a]lthough
the witness in the instant case did not testify as to [Taylor’s] guilt, he did
testify as to his opinion of [Taylor’s] culpable mental state, which is an
ultimate fact question for the jury’s determination.”[3]  Id.  As the State points out, however, testimony
in the form of an opinion or inference otherwise admissible is not
objectionable now because it embraces an ultimate issue to be decided by the trier of fact.  See Tex. R. Evid.
704.  Officer Fletcher also did not offer
an opinion as to James’s mental state.  Taylor is, therefore, inapposite.

          As with James’s first argument, rule
of evidence 701 governs this issue.  The
complained-of question specifically inquired about the sense of James’s self-defense assertion in light of Officer
Fletcher’s observations.  The State did
not ask Officer Fletcher to opine on the truthfulness of another witness’s
testimony, to opine on the truthfulness of James’s assertion of self-defense, to
opine whether James was guilty, or to even opine on James’s credibility, thus possibly
encroaching upon the jury’s province to make credibility determinations.  Instead, the question inquired about the
logical force of James’s assertion in light of what Officer Fletcher had
personally observed.  Officer Fletcher
responsively opined that the assertion did not make sense because she observed
at the second call that James had no new injuries but Maggie—unlike at the
first call—had a beaten, bloody, swollen face. 
The trial court could have reasonably concluded that Officer Fletcher’s
testimony—which was also relevant to show the contrast between Maggie’s
condition at the first disturbance call and her condition at the second call—was
admissible under rule 701 because it was rationally based on events that she
perceived, was relevant to whether James had assaulted Maggie, and did not expressly
question James’s or another witness’s truthfulness or credibility.  See
Tex. R. Evid. 701. 
Therefore, we hold that the trial court did not abuse its discretion by
permitting Officer Fletcher to so testify.

          Even if the trial court abused its
discretion by permitting Officer Fletcher to testify that James’s assertion of
self-defense made no sense to her, the error was harmless.  Generally, the erroneous admission or
exclusion of evidence is nonconstitutional error
governed by rule 44.2(b) if the trial court’s ruling merely offends the rules
of evidence.  See Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001).  Under rule
44.2(b), we are to disregard the error if it did not affect appellant’s
substantial rights.  Tex. R. App. P.
44.2(b); see Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet.
ref’d).  A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury’s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v.
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d at
643.  Conversely, an error does not
affect a substantial right if we have “fair assurance that the error did not
influence the jury, or had but a slight effect.”  Solomon, 49 S.W.3d at
365; Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In
making this determination, we review the record as a whole, including any
testimony or physical evidence admitted for the jury’s consideration, the
nature of the evidence supporting the verdict, and the character of the alleged
error and how it might be considered in connection with other evidence in the
case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the jury instructions,
the State’s theory and any defensive theories, whether the State emphasized the
error, closing arguments, and even voir dire, if
applicable.  Id. at
355–56.

          We have reviewed the record as a
whole.  Notwithstanding the evidence of
James’s guilt, even in the absence of Officer Fletcher’s complained-of
testimony, the jury could have reasonably concluded—as it implicitly did by
rejecting his claim of self-defense—that James’s assertion of self-defense made
no sense based on other evidence admitted without objection.  For example, Maggie testified that after
James burst through the front door of her house, he told her, “[Y]ou bitch, I’m going to show you what real torture is all
about; I’m going to do things to you that you can’t even dream in your own
nightmares.”  Maggie also testified that
she spoke with James at some point after the incidents and that James wanted
her to tell the police a different version of the facts—that she was elbowed
when some kids from next door jumped him. 
Further, Ray Harder, a paramedic who responded to both the first and
second calls at Maggie’s residence, testified like Officer Fletcher that
compared to the first visit, Maggie had “observable injuries the second time.”  Consequently, the admission of Officer
Fletcher’s testimony that James’s assertion of self-defense did not make sense
did not affect James’s substantial rights; we have a fair assurance that the
admission either did not influence the jury or that it had but a slight
effect.  See Tex. R. App. P. 44.2(b); Motilla, 78
S.W.3d at 355–57.  Thus, assuming
that the trial court abused its discretion, which it did not, the error, if
any, was harmless.

IV.  Maggie’s Alleged Prior
Conduct

          In his second issue, James argues that
the trial court abused its discretion by prohibiting him from questioning Maggie
about a prior incident in which she allegedly attacked him when they lived at a
different address.  The following
exchange occurred during James’s cross-examination of Maggie:

          Q.    And
did you and [James] ever live at any other address other than the Bolivar
Street address?

 

                   A.    110 Owens.

          Q.    Owens
Street?  While you and Mr. James lived at
the Owens Street address, do you recall whether or not Mr. James ever called
the police out there?

 

          [Prosecutor]:  Your Honor, at this point in time, I’d object
to the relevance of that.

          May we approach, Your Honor?

 

                   THE COURT:   You may.

                   (At
the bench outside the hearing of the jury)

 

          [Defense Counsel]:  Your Honor, it’s my understanding that the
police went out to the Owens Street address and that Mr. James --

 

                   THE COURT:   How is that relevant?

                   . . . .

          [Defense Counsel]:  It’s my understanding that she attacked him
with a box cutter and cut the bed up. 
She may deny it, but I think I have the right to ask her.

 

                   [Prosecutor]:  I think it’s a specific instance of conduct --

                   THE COURT:   I sustain the objection.

James
contends that “[t]his evidence was crucial for [his] contention that he acted
in self-defense. . . .  Without this
testimony, [his] argument that he acted in self-defense was not believed by the
jury.”

          Rule 404(b) provides for the
admissibility of specific bad acts only to the extent that they are relevant
for a purpose other than to show
character conformity.  Tex.
R. Evid. 404(b).  Because a complainant’s unambiguous, violent,
or aggressive act needs no explaining, evidence of the complainant’s extraneous
conducted admitted in conjunction with his unambiguous act would have no
relevance apart from its tendency to prove the victim’s character conformity
and, thus, would be inadmissible.  London v. State, 325 S.W.3d 197, 205–06
(Tex. App.—Dallas 2008, pet. ref’d); Mai
v. State, 189 S.W.3d 316, 321 (Tex. App.—Fort Worth 2006, pet. ref’d); see Thompson v. State, 659 S.W.2d 649,
653–54 (Tex. Crim. App. 1983) (reasoning that when complainant’s conduct was
ambiguously aggressive, prior, specific acts of violence were admissible so far
as they tended to explain complainant’s conduct).  Therefore, two conditions must exist before a
complainant’s extraneous act will be admissible to support a claim of
self-defense:  (1) some ambiguous or uncertain evidence of a
violent or aggressive act by the victim must exist that tends to show the
victim was the first aggressor; and (2) the proffered evidence must tend
to dispel the ambiguity or explain the victim’s conduct.  Mai,
189 S.W.3d at 321; Reyna v. State, 99
S.W.3d 344, 347 (Tex. App.—Fort Worth 2003, pet. ref’d) (citing Torres v. State, 71 S.W.3d 758, 762
(Tex. Crim. App. 2002)).

          James asserted that he acted in
self-defense because Maggie attacked him when he returned to her house.  Maggie’s conduct is unambiguous.  Consequently, neither the first nor second
conditions above are met.  See Mai, 189 S.W.3d at
321; Reyna, 99 S.W.3d at
347.  The testimony that James sought to
proffer from Maggie about a prior incident in which she allegedly attacked him does
nothing more than show character conformity. 
The trial court did not abuse its discretion by refusing to admit character
evidence.  See Tex. R. Evid. 404(b).  We overrule James’s second issue.

V.  Conclusion

          Having overruled all of James’s
issues, we affirm the trial court’s judgment.

 

                                                                   BILL MEIER

                                                                   JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

 

DAUPHINOT, J. filed a dissenting and
concurring opinion.

 

PUBLISH

 

DELIVERED:  February 10, 2011

 

 










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00334-CR

 

 


 
 
 Ogden James
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
158th District Court OF Denton
COUNTY

------------

DISSENTING
AND CONCURRING OPINION

----------

I write separately because I cannot agree with
the majority that Officer Fletcher’s opinion that Maggie “had just had the crap
beat out of her” was properly admitted as “based on and derived from her
cumulative personal knowledge.”[4]  The majority’s statement that there is a
“plethora,” that is, an “extreme excess[,] ‘an
embarrassment,’”[5] of “undisputed facts
demonstrating that Officer Fletcher’s responsive lay opinion was rationally
based on events that she personally perceived during both visits to Maggie’s
residence”[6] is both confusing and,
perhaps, a bit hyperbolic.  I think the
majority is suggesting that because they conclude that the evidence is
sufficient to support conviction, we impute knowledge of all the evidence in
the case to Officer Fletcher at the moment she decided to call for an
ambulance.  Respectfully, if we examine,
without emotion, the evidence objectively known to Officer Fletcher at that
moment, we see that

1.   
Officer Fletcher was not present when any
assault occurred and could not, therefore, have had any personal knowledge of
what occurred because it did not occur in her presence.

 

2.   
The first time Officer Fletcher arrived at the
house in question, Appellant was standing outside, and Maggie was inside
sitting on the couch or a chair, intoxicated and upset.  Officer Fletcher thought that Maggie had been
crying.  Appellant said that Maggie was
intoxicated and accusing him of sleeping with the girl who lived next door.  Officer Fletcher detected alcohol on both
Appellant and Maggie, but Maggie was the more intoxicated.  Appellant was calm and had a couple of
scratches on his face.  Maggie’s injuries
were not apparent to Officer Fletcher until Maggie pointed them out.  Officer Fletcher saw no severe injuries on
either person.  Although Maggie claimed that
Appellant had choked her, Officer Fletcher observed nothing on Maggie’s
neck.  Officer Fletcher saw a small cut
on Maggie’s leg and a small mark of a finger or thumb on one arm.  It appeared to Officer Fletcher that both
were aggressors.  It appeared to be
mutual combat, and both were at fault.

 

3.   
The second time that Officer Fletcher was
called to the house, she first heard a sound like
someone or something being thrown around inside the house.  She also heard yelling and screaming.  She testified that she just had “that gut
feeling that something [was] going to—something [was] not right.”  Maggie opened the door, and Appellant was
right behind her.  Officer Fletcher
described Maggie’s face as “covered in blood”; “her left eye was completely
bruised and swollen shut”; she “had blood coming out her eye down her cheeks”;
“she had a cut here”; and “some of her teeth were loose.”  Maggie was “bawling” and “holding her
face.”  Officer Fletcher testified, “[Maggie]
said something along the lines, he did this to me, you know.  I told you—you know, I told you the first
time.  And, you know, she was just very
upset.”

 

Looking at the record objectively rather than
emotionally, the “plethora of undisputed facts” regarding the cause of Maggie’s
black eye and bloody face being that “she had just had the crap beat out of
her” by Appellant is that (1) Maggie was drunk and angry; (2) Officer
Fletcher saw no one in the house other than Appellant and Maggie (although
there is no evidence that Officer Fletcher searched the house); and (3) Maggie
said, “[S]omething along the lines, he did this to
me.”  Despite what the majority refers to
as the “plethora of undisputed facts,” we are still left with very little
objective evidence to form the basis of Officer Fletcher’s opinion of the cause
of the injuries when she called for the ambulance.

The majority speculates that only two possible
explanations for Maggie’s injuries exist:  either she harmed herself,
or Appellant harmed her.  Respectfully,
the majority falls into the same trap as Officer Fletcher in leaping to a
determination of credibility instead of relying on the record.  Officer Fletcher heard sounds of someone or
something “getting thrown around” inside the house, but she could not see what
was happening.  Did the mutual combat
continue, causing something to fall on Maggie? 
Was she pushed into something that caused her injuries?  Was something thrown that hit her?  Did she fall against something in her
intoxicated and angry state?  I do not
know, the majority does not know, and Officer Fletcher did not know at the time
she called for the ambulance.  She had no
personal knowledge of what had caused Maggie’s injuries.

The cause of Maggie’s injuries was an element
of the offense that the State was obligated to prove beyond a reasonable
doubt.  Officer Fletcher’s statement was
nothing more than her personal opinion regarding that element of proof, but it
was not based on her personal knowledge. 
It was nothing more than a guess, based on what she “interpreted
Maggie’s statement” to mean, and her conclusion that someone she did not know
was a truth-teller.  Moreover, her
statement was not responsive to the question. 
She was asked why she called for an ambulance, not what caused Maggie’s
injuries.

          The
majority relies on Fairow v. State[7] in holding that Officer
Fletcher was allowed to offer a lay opinion based on her personal knowledge
under rule 701.[8]  But the Fairow court explained that

[w]hen conducting a Rule 701 evaluation, the trial court must decide
(1) whether the opinion is rationally based on perceptions of the witness
and (2) whether it is helpful to a clear understanding of the witness’s
testimony or to determination of a fact in issue.  The initial requirement that an opinion be
rationally based on the perceptions of the witness is itself composed of two
parts.  First, the witness must establish
personal knowledge of the events from which his opinion is drawn and, second,
the opinion drawn must be rationally based on that knowledge.[9]

 

          Officer
Fletcher, however, was not stating an opinion. 
She was stating, as a fact, her guess. 
She had no personal knowledge of the cause of Maggie’s injuries, only
speculation.  She did not state that she
was expressing an opinion, but, rather, couched her guess as a fact.  And that fact was an essential element of the
offense about which she had no personal knowledge.

          Nor
can I agree that Appellant did not object to the testimony.  The Texas Court of Criminal Appeals has
explained that 

[t]o properly preserve an issue concerning the admission of evidence
for appeal, “a party's objection must inform the trial court why or on what
basis the otherwise admissible evidence should be excluded.”  However, a party need not spout “magic words”
or recite a specific statute to make a valid objection.  References to a rule, statute, or specific
case help to clarify an objection that might otherwise be obscure, but an
objection is not defective merely because it does not cite a rule, statute, or
specific case.  As this Court stated in Lankston v. State,

 

Straightforward communication in plain English will always suffice . . . .  (A)ll
a party has to do to avoid the forfeiture of a complaint on appeal is to let
the trial judge know what he wants, why he thinks himself entitled to it, and
to do so clearly enough for the judge to understand him at a time when the
trial court is in a proper position to do something about it.

 

          The objection must
merely be sufficiently clear to provide the trial judge and opposing counsel an
opportunity to address and, if necessary, correct the purported error.  In making this determination, Lankston states
that an appellate court should consider the context in which the complaint was
made and the parties’ understanding of the complaint at the time.[10]

 

          Appellant’s
objection was precisely that Officer Fletcher was couching an opinion as a
fact.  Any trial judge would understand
his objection:  Officer Fletcher is
offering a nonresponsive statement of fact when she was qualified only to admit
that she was expressing an opinion that Maggie needed medical attention, not to
state as a fact her guess as to the cause of the injuries when she was not
asked what she guessed caused the injuries.

          I
do not understand the majority’s statement that Ford v. State is inapposite. 
Officer Fletcher was qualified to testify that in her opinion, Maggie
needed medical attention, Appellant conceded that
Officer Fletcher was qualified to express that opinion and to make that
determination on the occasion in question, and Appellant did not object to that
testimony.  However, Officer Fletcher was
not qualified to state that she knew the cause of Maggie’s injuries at the time
she called the ambulance, Appellant did object to the statement that “[Maggie]
had just had the crap beat out of her,” and that objection was improperly
overruled by a trial court who understood the objection.  Ford is
directly on point as authority that Appellant properly objected to the
admission of Officer Fletcher’s testimony about the
causation of Maggie’s injuries.

          Maggie,
however, testified at trial.  She
testified that Appellant had caused her injuries.  The improper admission of Officer Fletcher’s
testimony was therefore harmless.[11]  For this reason only, I concur in the
majority’s result.  But I cannot agree
that this court should give either the State or the defense the green light to
offer such speculation under the guise of rule 701 lay
opinion testimony.  I therefore must
respectfully dissent from this portion of the majority opinion.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PUBLISH

 

DELIVERED:  February 10, 2011











[1]Maggie
agreed that she may have told the police or 911 that she had scratched James’s
face when she was trying to keep him from hitting her.





[2]Officer
Fletcher described the confrontation as “mutual combat”; “they both had fault.”





[3]The
Taylor court held that the error was
harmless.  Taylor, 774 S.W.2d at 34–35.





[4]Majority op. at 6.





[5]Plethora, http://dictionary.sensagent.com/plethora/en-en/ (last
checked Jan. 28, 2011).





[6]Majority op. at 7.





[7]943 S.W.2d 895 (Tex. Crim. App. 1997).





[8]See Tex. R. Evid.
701.





[9]Fairow, 943 S.W.2d at 898 (citations and
footnote omitted).





[10]Ford v. State, 305 S.W.3d
530, 533 (Tex. Crim. App. 2009) (citations omitted).





[11]See Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998).