REYNA V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-003-CR

DANIEL ALONZO REYNA

A/K/A DANIEL A. REYNA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

Appellant Daniel Alonzo Reyna a/k/a Daniel A. Reyna appeals from his conviction for the murder of Samuel “Sammy” Delapaz.  Appellant pled not guilty, and a jury convicted him and sentenced him to life in prison.  In three points, Appellant contends that the trial court erred in limiting Appellant’s testimony, in admitting evidence as to Appellant’s gang membership at the guilt-innocence phase, and in permitting the impeachment of a defense witness.  We affirm.

Background

In the early morning hours of July 15, 2000, Appellant and Delapaz became involved in an altercation at Shooters, a Fort Worth bar and pool hall.  Each shot the other with a gun.  Appellant shot Delapaz in the hand and the head.  Delapaz shot Appellant in the side.  The shot to Delapaz’s head ultimately caused his death.

Testimony at trial conflicted as to whether Appellant or Delapaz had shot first.  Marla Pyka, Delapaz’s girlfriend, testified that Appellant had fired first. Appellant and several defense witnesses
, including Raul Perez and Jose Chavez, testified that Delapaz had flashed his gun first and fired the first shot.

Over Appellant’s objection, the court allowed the State to impeach Perez with prior convictions for DWI, possession of marijuana, and evading arrest. The court admitted testimony of Maria Salinas, an officer with the Fort Worth Police Department’s Gang Intelligence Unit, indicating that Appellant, Perez, and Chavez were members of Sur Trese, a criminal street gang in Fort Worth, and, as members of the same gang, might lie to protect one another.

Limiting Appellant’s Testimony

In his first point, Appellant contends that the trial court erred in limiting his testimony concerning the victim’s violent character when Appellant had raised the issue of self-defense.  At trial, Appellant testified that he was scared of the victim for “a couple of reasons.”  The court, however, would not allow Appellant to testify as to why he was afraid of the victim.  Appellant’s more specific complaint is that the trial court erred in refusing to admit testimony that would have shown prior bad acts of the victim:  1) that he had been in a fight with unidentified parties at Shooters “prior” to the shooting;
(footnote: 1) 2) that he had just been released from the penitentiary for burglary of a habitation; 3) that he carried a gun “from time to time;” and 4) that he was a drug dealer.

An appellate court reviews a trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State, 
 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  An appellate court will not reverse a trial court’s ruling unless the ruling falls outside the zone of reasonable disagreement.  
Id.

Generally, a defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the victim’s violent character.
  Tex. R. Evid.
 404(a)(2);
 Torres v. State,
 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). The defendant may offer opinion or reputation testimony to prove the victim acted in conformity with his violent nature.  
Tex. R. Evid.
 404(a)(2), 405(a); 
Torres,
 71 S.W.3d at 760.  Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant’s fear of danger, or to show that the victim was the first aggressor.  
Torres, 
 71 S.W.3d at 760.  

This general rule is not without limitation.  Rule 404(b) provides for the admissibility of specific bad acts only to the extent that they are relevant for a purpose other than to show character conformity.  
Tex. R. Evid.
 404(b); 
Torres, 
71 S.W.3d at 760.  Because a victim’s unambiguous, violent or aggressive act needs no explaining, evidence of the victim’s extraneous conduct admitted in conjunction with his unambiguous act would have no relevance apart from its tendency to prove the victim’s character conformity, and thus would be inadmissible. 
Tex. R. Evid.
 404(b); 
cf. Thompson v. State, 
659 S.W.2d 649, 653-54 (Tex. Crim. App. 1983) (holding that when the victim’s conduct was ambiguously aggressive, prior, specific acts of violence are admissible only so far as they tend to explain the victim’s conduct).  Two conditions precedent must exist, therefore, before an extraneous act of the victim will be admissible to support a claim of self-defense:  1) some ambiguous or uncertain evidence of a violent or aggressive act by the victim must exist that tends to show the victim was the first aggressor; and 2) the proffered evidence must tend to dispel the ambiguity or explain the victim’s conduct.  
See Torres,
 71 S.W.3d at 762; 
Thompson, 
659 S.W.2d at 653-54 (finding that the appellant was entitled to establish the victim’s violent character to explain his ambiguously aggressive conduct of walking toward the appellant with his arms outstretched).

The State argues that the trial court properly excluded testimony regarding various alleged bad acts and prior misconduct by the victim because the evidence supporting Appellant’s assertion that the victim was the first aggressor was unambiguous.  We agree.  Unlike the victim’s ambiguous act in 
Thompson
,
 
here the victim’s conduct of allegedly flashing his gun at Appellant and of allegedly shooting Appellant first are unambiguous acts of aggression and violence that need no explanation.  
See Thompson,
 659 S.W.2d at 654.
 
 Because of the unambiguous nature of the victim’s alleged conduct, neither the first nor second conditions precedent are met.  
See Torres,
 71 S.W.3d at 762.  We hold that the proffered testimony does nothing more than show character conformity.   
See 
Tex. R. Evid.
 404(b); 
Torres, 
71 S.W.3d at 760.
  Accordingly, we overrule Appellant’s first point.

Gang Membership

In his second point, Appellant contends that the trial court erred in admitting evidence at the guilt-innocence phase of trial concerning his gang membership because the prejudicial effect of admitting the evidence far outweighed its probative value. 
 See
 Tex. R. Evid. 
403.  In particular, Appellant complains of the admission of Officer Salinas’ testimony that indicated Appellant had admitted voluntarily to being a gang member as part of a police gang unit profiling program.  Because Appellant failed to properly preserve error, if any, we overrule this point.

In a hearing outside the presence of the jury and before the defense started its case in chief, the State suggested that if Appellant called several witnesses on his witness list, it would cross-examine them about their and Appellant’s membership in the Sur Trese criminal street gang for the “limited purpose of bias regarding their testimony or motivation to lie.”  Appellant’s only response was “[w]e will object to that.”  The trial court overruled the objection.  Appellant did not object on the grounds of rule 403 at any time.

Later the prosecution questioned several defense witnesses regarding their membership in Sur Trese, and Officer Salinas testified that the Fort Worth Police Department had identified Appellant and two other defense witnesses as gang members.  Appellant’s only objections were on the grounds of “speculation” and “leading the witness,” based on rules 602 and 611(c), and not upon the grounds of relevance or that the probative value of the evidence was substantially outweighed by its prejudicial effect as required by rules 402 and 403.  
See
 
Tex. R. Evid. 
402, 403, 602, 611(c). 

A general objection “amounts to no objection,” and does not preserve error for review.  
Tompkins v. State, 
774 S.W.2d 195, 218 (Tex. Crim. App. 1987), 
aff’d
, 490 U.S. 754 (1989); 
see
 
Tex. R. Evid.
 103(a)(1); 
Tex. R. App. P.
 33.1(a)(1)(A).  Here, Appellant’s general objection, “[w]e will object to that,” did not preserve the rule 403 complaint he asserts on appeal.  
See Tompkins,
 774 S.W.2d at 218. 
 We overrule his second point.

Impeachment of Witness

In his third point, Appellant contends that the trial court erred in permitting impeachment of defense witness Raul Perez with proof of prior misdemeanor convictions outside the scope of rule 609.
(footnote: 2)  The State argues that Perez opened the door to impeachment because Perez’s testimony left the jury with a false impression that Perez had been conducting himself as a law-abiding, hard-working, family man since abandoning his contacts with gang members.  Even if Perez did not create a false impression, the State argues that any error was harmless.

Perez’s Testimony

On direct examination, Perez testified that the victim had lifted his shirt and showed Appellant a gun tucked in the waistband of his pants.  Perez said that, in response, Appellant “pulled out” his own gun.  He also said that the victim fired at Appellant first.

On cross-examination, the State established that Perez was Appellant’s cousin; that he had a number of unusual tattoos; that he was considered to be a gang member by law enforcement authorities, though he denied being one; that he was familiar with gang signs; and that he knew “several members” of the Sur Trese gang, although he also denied that Appellant and Chavez, another defense witness, were members.

On re-direct, defense counsel tried to show that Perez was no longer involved in any gang activity.  Perez testified that he was “just friends” with Sur Trese gang members and had never been a gang member himself.  He said that his only participation in activities with gang members was drinking beers with gang members at a party at his house in 1994 when he was in high school.  Perez maintained that he had not had “anything to do” with gang members since leaving high school.  Perez made several references to his youth and childishness at the time of his association with gang members.  The State argues that, in particular, the following testimony by Perez opened the door to Perez’s criminal history:

Q. Have you had anything to do with these [gang members] since you got out of high school?

A. No, sir. 

Q.   What have you been doing since you got out of high school?

A. I got -- I have a family, I have two little boys and I just recently got divorced.

Q. Have you been working since you got out of the high school?

A. Yes sir.

The State argued to the trial court that the effect of this testimony left a false impression with the jury that Perez had “just been working and taking care of his family and things of that nature,” and the trial court agreed.  Appellant objected, countering that he had merely been trying on re-direct to “show there’s no gang activity.”  Subsequently, Perez recalled that he had testified “about how [he] had been working and spending time with [his] family,” and conceded that it was “not entirely true” because he had been doing “some other things.”  The State then questioned Perez about his 1996 convictions for DWI and possession of marijuana, and his 1998 convictions for DWI, driving while his license was suspended, and for evading arrest.  Perez admitted that he had been convicted of each of those offenses.

Standard of Review

As a general rule, specific acts of misconduct may not be introduced to impeach a party or witness.  
See Prescott v. State
, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); 
Murphy v. State
, 587 S.W.2d 718, 721 (Tex. Crim. App. 1979); 
Medina v. State
, 828 S.W.2d 268, 269-70 (Tex. App.—San Antonio 1992, no pet.). However, opposing counsel may introduce evidence about otherwise irrelevant past criminal history when a witness, during direct examination, “open[s] the door” or leaves a false impression with the jury as to the extent of either his prior arrests, convictions, charges, or trouble with the police. 
See Prescott
, 744 S.W.2d at 130-31; 
see also Delk v. State
, 855 S.W.2d 700, 704 (Tex. Crim. App.), 
cert. denied
 , 510 U.S. 982 (1993).  This exception is not limited to final convictions.  
See Prescott,
 744 S.W.2d at 130-31.

Here, the trial court expressly ruled that Perez’s testimony left a false impression with the jury about his activities and law abiding behavior since his gang member affiliations, saying, “You still left the impression [Perez] hasn’t been doing anything but working and going home and staying with [his] family.”  After reviewing the record and the overall tenor of Perez’s testimony, we agree with the State that the trial court could have found that Perez left a false impression with the jury.  
See Delk,
 855 S.W.2d at 704.  Accordingly, the trial court's ruling that Perez had opened the door to the admission of evidence of his prior arrests and convictions is not outside the zone of reasonable disagreement, and we will not disturb it on appeal.  
See Burden, 
55 S.W.3d at 615.  We overrule point three. 

We affirm the trial court’s judgment.

DIXON W. HOLMAN

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

PUBLISH

[DELIVERED FEBRUARY 13, 2003]

FOOTNOTES
1:
Appellant states in his brief that the victim’s fight with unidentified parties had occurred “days” before the shooting; however, the record shows that the alleged fight between the victim and “some of his friends” occurred sometime “prior to that night.”

2:
Rule 609(a) reads as follows:

(a) General Rule.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

Tex. R. Evid.
 609(a).