**Affirmed and Memorandum Opinion filed November 5, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00693-CR

---

### DEXTER LOPEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1316109**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Dexter Lopez, of the felony offense of aggravated assault with a deadly weapon and assessed his punishment at three years' confinement. Appellant challenges his conviction in four issues, asserting that the evidence is legally insufficient to support his conviction; that the trial court abused its discretion by (a) admitting lay witness testimony that amounted to a legal conclusion and (b) permitting improper impeachment of appellant in violation of the Texas Rules of Evidence; and that the trial court committed

reversible error by failing to sua sponte provide a jury instruction regarding extraneous offenses and prior bad acts at the punishment phase of his trial. We affirm.

## BACKGROUND

Appellant and the complainant, LaTonya Watts-Smith, had a friendly relationship for several years before the incident in this case. At the time of this event, their friendship had deteriorated. On August 9, 2011, LaTonya drove her cousin, Joseph "Jo-Jo" Johnson, to the apartment complex in Houston where appellant lived to visit an acquaintance Jo-Jo was dating, Adrienne "Peaches" Hogan. Watts-Smith's husband, Michael, was also in the vehicle with LaTonya and Jo-Jo. When they arrived at the apartment complex, appellant was standing outside with Peaches. Peaches walked up to the white Suburban that LaTonya, Jo-Jo, and Michael were in and began talking to LaTonya. Jo-Jo got out of the SUV and stood by the passenger door, talking to Michael. Appellant walked up to the Suburban and started cursing and making derogatory remarks to LaTonya.

Jo-Jo took offense to these remarks and started verbally defending LaTonya. He and appellant got into an argument; the two agreed to engage in a fight. Appellant went back into his apartment to change into appropriate fighting shoes, while Jo-Jo removed his shirt. Appellant came back outside, and he and Jo-Jo began wrestling around on the ground. At the start of the fight, appellant gained the upper hand and got a chokehold on Jo-Jo. LaTonya intervened in the fight and hit appellant on the head a few times in defense of Jo-Jo. Michael pulled her away, telling her to leave them alone because "it's man on man."

At some point during the fight, appellant's wife, Angel, came out of their apartment and stood nearby watching the fight. LaTonya confronted Angel; the two began arguing. Jo-Jo began winning the fight, and appellant shouted to Angel

2

to "let one off" or "shoot that thing." Angel pulled a gun out from behind her back, but didn't shoot it and "fumbled" it. Once she pulled the gun out, people scattered in different directions, and appellant took the gun from Angel.

LaTonya and Jo-Jo ran and hid behind the Suburban; appellant chased them. When LaTonya peeked up to try and see where appellant was, appellant, with the gun in his hand, reached his arm inside the open window of the Suburban and shot her through the tinted window on the other side of the SUV. Jo-Jo wasn't near that side of the SUV and it was possible to see through the tinted window from inside the truck. A shell casing was later found inside the Suburban.

LaTonya, not realizing she had been shot, ran toward a nearby fire truck that had been called out in response to a report of an unrelated fire. Appellant followed her as she ran towards the fire truck and pointed the gun at her again. The firefighters inside the truck let LaTonya into the back of the truck and started treating her. She had several bullet fragments in her mouth, and several of the teeth on the left side of her mouth had been torn out. One of the firefighters called the police, who arrived at the scene shortly thereafter and arrested appellant.

At trial, LaTonya, Michael, the firefighters, and several police officers testified. Appellant testified and acknowledged much of the above. However, he claimed that, prior to this incident, both Jo-Jo and LaTonya had threatened him. He also asserted that LaTonya had previously called his mother several times and expressed her anger towards him, which made him feel threatened. He testified that, a few days before this incident, LaTonya had "threaten[ed] to shoot me and my family up." Appellant stated that, when LaTonya, Michael, and Jo-Jo arrived at the apartment complex, he approached the Suburban because he didn't want them to come near his apartment and his family. He testified that he and LaTonya exchanged words, although he stated that LaTonya started the verbal altercation.

3

According to appellant, he was walking back to his apartment when Jo-Jo verbally accosted him, and the two of them agreed to engage in a fight. Appellant explained that, at the beginning of the fight, he had the upper hand. He testified that LaTonya had interfered briefly in the fight when he had Jo-Jo pinned down, but he stated that she punched him in the head numerous times. Appellant stated that, during the fight, he had a slight epileptic seizure and got dizzy.[1] He testified he then asked his wife for his gun. When prompted by his counsel if he heard LaTonya say anything, he responded,

> Oh, yes, that's what made me get the gun because I heard her say --
>
> * * *
>
> ["]I'm going to get my gun[,"] and [she] started walking towards her vehicle. That's when I asked where is that thing [gun]? In case anybody gon' get hurt, it won't be me and my family.

Appellant testified that he cocked the gun and pressed the eject button so it wouldn't automatically reload before approaching LaTonya and Jo-Jo. He stated that he fired a warning shot, trying to scare them away "because they were the ones that [he] felt threatened by." Appellant explained that he fired this shot at the window of the Suburban, claiming that he didn't see "any particular individuals." He said he was trying to get them away from the SUV because he was frightened by the comments that were made referring to "grabbing a gun."

He acknowledged that a person could see through the tinted windows from the inside of the truck if the other window was down. But he claimed that he didn't have a clear view through the open window he shot through because his face

---

[1] LaTonya testified that she was aware that appellant suffered from epilepsy.

4

was by a closed tinted window.[2]  He agreed that he fired the shot even though he couldn't see what or who was behind the Suburban and acknowledged that he knew both LaTonya and Jo-Jo were hiding behind it.  He further agreed that he pointed the gun at LaTonya as she was running toward the fire truck but denied trying to shoot her.  He testified that he went back into his apartment and put the gun in the closet.[3]  Finally, appellant acknowledged that he never saw anyone else involved in the incident with a gun.

Appellant called a neighbor, Pamela White, to testify on his behalf.  Pamela, who watched the fight from her upstairs apartment, described it quite differently than the other witnesses, including appellant.  She stated that the fight started and appellant fell down with Jo-Jo on top of him.  She testified that LaTonya came over, and LaTonya and Jo-Jo proceeded to hit and kick appellant "while he was down."  According to Pamela, appellant's wife came out and said something.  Pamela testified that LaTonya got off appellant to go to her car, and Jo-Jo got up and then "everybody was running around."  She stated that she heard LaTonya yell as LaTonya was going toward her car, "I'll shoot you first."  Pamela testified she didn't know to whom the statement was directed because LaTonya had been arguing with Angel.  Pamela stated she thought LaTonya meant that she was going to get a gun when she made that statement because everyone scattered when LaTonya said it.  According to Pamela, she didn't see what happened afterwards.  She further acknowledged that she never saw LaTonya with a gun and that she didn't know if LaTonya was running away from someone "who had already pulled a gun."

---

[2] Appellant's testimony was inconsistent regarding the windows on the Suburban.  He testified at one point that all the windows were open on the SUV, but later testified that his face was by a closed tinted window when he fired the "warning shot."

[3] Appellant testified he left the gun and bullets in plain sight in his closet.  He could not explain how the police, who searched his apartment, were unable to locate the gun.

Appellant's mother also testified on his behalf, corroborating his testimony regarding the angry calls from LaTonya. Appellant's mother further stated that appellant was angry with LaTonya before this incident because appellant believed that LaTonya had stolen some movies and cigarettes from him. She also acknowledged that she wanted to do what she could to protect her son and that she had no personal knowledge of what led up to the shooting.

After hearing the evidence and argument of counsel, the jury was charged by the court. The charge included instructions on the law of self defense. The jury found appellant guilty of aggravated assault. After a punishment hearing, the jury assessed appellant's punishment at three years in the Institutional Division of the Texas Department of Criminal Justice. This appeal timely followed.

### SUFFICIENCY

We first address appellant's second issue, in which he challenges the sufficiency of the evidence. Appellant contends that the evidence is insufficient to sustain his conviction because (1) LaTonya is not credible, (2) the State failed to prove beyond a reasonable doubt that he acted intentionally or knowingly, and (3) the State failed to provide expert testimony to prove beyond a reasonable doubt that the "laceration" injuries LaTonya suffered were caused by a firearm and not by something else.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the conviction and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the exclusive judge of the credibility of witnesses and the weight to be

given their testimony. *See Isassi*, 330 S.W.3d at 638. Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.*

Because the jury is the exclusive judge of the credibility of witnesses, we will not re-evaluate its determination of LaTonya's credibility. *Id.* Instead, under the appropriate standard of review, we must determine whether the State sufficiently established that appellant intentionally or knowingly caused bodily injury to LaTonya using a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2). A firearm is, per se, a deadly weapon. *See id.* § 1.07 (a)(17)(A); *Simpson v. State*, 227 S.W.3d 855, 861 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Further, the fact that LaTonya's injuries may have been, in part, caused by glass from the window shattered by the bullet does not negate evidence that her injuries were caused by the use of a deadly weapon. *Cf. Simpson*, 227 S.W.3d at 861 ("The indictment charged that appellant . . . caused Gallentine bodily injury by 'using a deadly weapon, namely, a firearm.' . . . The fact that Gallentine's injury was caused by the butt of the gun instead of a bullet is of no consequence."). No expert testimony was necessary to establish that LaTonya's injuries were caused by appellant's use of a deadly weapon.[4] *See id.*

Turning to the State's proof of appellant's *mens rea*, a person acts intentionally "when it is his conscious objective or desire to . . . cause the result," and a person acts knowingly "when he is aware that his conduct is reasonably certain to cause the result." Tex. Penal Code Ann. § 6.03(a), (b). Proof of a

---

[4] Appellant has not cited a single case to support his allegation that expert testimony was necessary to establish that LaTonya's injuries were caused by his shooting the gun. Indeed, appellant never denied at trial that he caused her injuries by shooting her, and in his appellate brief, he admits that numerous bullet fragments were removed from the area of LaTonya's injuries. He claims that her injuries were "caused first by shattering glass, and that bullet fragments then followed within milliseconds."

mental state almost always depends on circumstantial evidence and may be inferred from the surrounding circumstances. *See Young v. State*, 358 S.W.3d 790, 802 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Here, the following evidence supports the jury's finding that appellant had the requisite intent. On the day of the shooting, appellant approached the vehicle LaTonya was in and the two exchanged words. He later agreed to fight Jo-Jo, and when he started to lose, he told his wife to pull out a gun. When Angel fumbled the gun, appellant took it from her. LaTonya, Michael, and appellant testified to these facts. Appellant, with a gun in his hand, chased LaTonya and Jo-Jo around their white SUV. LaTonya, Michael, appellant, and the three firefighters testified to these facts. Both LaTonya and Jo-Jo were hiding behind the white Suburban, with appellant, armed with a gun, on the other side. When LaTonya peeked up to see where appellant was, appellant, with the gun in his hand, extended his arm inside the open window of the SUV and shot her through a window. As LaTonya ran away, appellant followed her and continued to point the gun at her. LaTonya testified that she heard the gun "clicking" as if appellant were trying to shoot at her again as she ran towards the fire truck. Two of the firefighters testified that they saw appellant pointing the gun at LaTonya as she approached their fire truck. One of them testified that he believed that appellant was trying to shoot at her. Appellant agreed that he pointed the gun at LaTonya as she ran towards the fire truck. The jury was free to believe this testimony and disbelieve appellant's and Pamela's testimony described *supra*. *See id.*

Based on this evidence and the reasonable inferences drawn from it, we conclude that a rational factfinder could have found, beyond a reasonable doubt, that appellant intentionally or knowingly shot LaTonya in the face with a gun— *i.e.*, caused bodily injury to LaTonya by using a firearm. *See Hicks v. State*, 401

8

S.W.3d 89, 92 (Tex. App.—Houston [14th Dist.] 2011), *rev'd on other grounds*, 372 S.W.3d 649 (Tex. Crim. App. 2012); *Simpson*, 227 S.W.3d at 861. Accordingly, we overrule appellant's second issue.

EVIDENTIARY COMPLAINTS

## A.     Standard of Review

We review a trial court's admission of evidence for abuse of discretion. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). The trial court does not abuse its discretion unless the court acts outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

## B.     Admission of "Legal Conclusion"

In his first issue, appellant asserts that the trial court abused its discretion in admitting Peaches' testimony that "it was wrong . . . for [appellant] to shoot [LaTonya.]" Appellant objected that this testimony "invade[d] the province of the jury," and the trial court overruled this objection.

Appellant complains that the trial court erred in overruling this objection because a witness is not permitted to give an opinion on an ultimate fact. Appellant's argument is incorrect; such testimony is expressly permitted under our Rules of Evidence. Tex. R. Evid. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *Fairow v. State*, 943 S.W.2d 895, 897 n. 5 (Tex. Crim. App. 1997); *Ruiz-Angeles v. State*, 351 S.W.3d 489, 499 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Accordingly, we overrule appellant's first issue.

## C.     Improper Impeachment

Appellant asserts in his third issue that the trial court abused its discretion in allowing the State to improperly impeach him during the punishment phase in violation of Texas Rules of Evidence 609 and 404(b).[5]

On direct examination of appellant during punishment, the following exchanges occurred:

> Q.     When you were arrested this time, was that the first time you've ever been arrested?
>
> A.     First, yes, ma'am.
>
> * * *
>
> Q.     Is there something that you would like to tell the jury for them to understand about you when they're deciding your fate?
>
> A.     Yes.  I don't get in trouble.  This is my first problems [sic] I ever been in.

Following up on cross examination, the State questioned appellant as follows:

> Q.     Mr. Lopez, you said you were never arrested . . . before this incident.  That's not true, is it?
>
> A.     No sir, it's true.
>
> Q.     Back on September 12, 2009, you were arrested for assaulting a woman named Tanika Martinez; do you remember that?
>
> A.     No, I wasn't arrested for that, sir.  I had a warrant for driving without a license, that's why they took me in.  Allegations were made against me, but that's not the reason they took me in.
>
> Q.     And one of the allegations was a Class C assault on Tanika Martinez, which you were arrested and went to municipal jail, correct?
>
> A.     No, I wasn't arrested for that, sir.  So, no, incorrect.

---

[5] Appellant made no objection regarding Texas Rule of Evidence 404(b), so we do not address that portion of his issue. *See* Tex. R. App. P. 33.1(a).

10

Q. Would your mug shot remind you?

At that point, appellant's counsel objected and asked to approach the bench, where she claimed there was "a clear request for 609 notice."[6] *See* Tex. R. Evid. 609(f) (providing that evidence of a conviction is not admissible if, after timely written request of adverse party specifying the witness, the proponent fails to give that party sufficient advance written notice of intent to use such evidence). The trial court responded that appellant had "opened the door" to this evidence. Defense counsel asserted that she would not have asked the questions that opened the door if she had been properly noticed. The prosecutor responded that the offense report had been in the State's file and that he had not planned to introduce evidence of this arrest unless appellant opened the door. After hearing from both the defense and the State, the trial court stated,

> In light of [appellant's] representations, the question has already been asked and answered and there was no objection at the time that he answered -- that you asked the question or that he answered the question. I think the objection came with regards to the mug shot. So, let's move on.

When testimony resumed, the State clarified with appellant that the assault offense was a "fine only allegation," that the woman had not been hurt, and that appellant had not been convicted of this offense. Appellant denied again that he had been arrested for this offense and reiterated that he was arrested for tickets he had received for driving without a license.

Specific acts of misconduct are admissible to impeach a party or witness only if both the crime was a felony or involved a crime of moral turpitude,

---

[6] Appellant has not provided a record citation to such a request and our review has not revealed any 609(f) request. Thus, to the extent that appellant urges error from lack of notice, appellant has failed to establish that this evidence was not admissible under subsection (f) of Rule 609.

regardless of punishment, and the trial court determines that the probative value of the evidence outweighs its prejudicial effects. *See Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993); *Reyna v. State*, 99 S.W.3d 344, 348 n. 2 (Tex. App.—Fort Worth 2003, pet. ref'd); *see also* Tex. R. Evid. 609(a). An exception to the prohibition against impeachment through a prior conviction arises when the testimony of a witness during direct examination "opens the door" or leaves a false impression with the jury as to the extent of the witness's prior arrests, convictions, charges, or trouble with the police. *See Delk*, 855 S.W.2d at 704; *Reyna*, 99 S.W.3d at 349. An exception to that general rule against admission of unadjudicated bad acts arises when a witness leaves a false impression as to the extent of his prior charges or "trouble" with the police. *Prescott v. State*, 744 S.W.2d 128, 130–31 (Tex. Crim. App. 1988); *Hall v. State*, 161 S.W.3d 142, 156 (Tex. App.—Texarkana 2005, pet. ref'd).

Here, we agree that appellant opened the door to the State's questions about the prior assault allegation. Appellant made the blanket statement on direct examination that he had never been arrested before, that he didn't get "into trouble," and that this was the first "problem" he had had, implying that he had never had any interactions with the police before. After reviewing the record, we agree that the trial court could have found that appellant left a false impression with the jury through this testimony. Thus, the court's ruling that appellant "opened the door" to the admission of evidence of this allegation is not outside the zone of reasonable disagreement, and we will not disturb it on appeal. *See Taylor*, 268 S.W.3d at 579. We overrule appellant's third issue.

### SUA SPONTE JURY INSTRUCTION

In appellant's fourth and final issue, he argues that the trial court committed reversible error by failing to sua sponte provide a jury instruction on extraneous

offenses/prior bad acts in the punishment charge. This issue is tied to his third issue, in which he complains that the trial court erred in permitting improper impeachment, discussed above.

Section 3(a) of article 37.07 of the Code of Criminal Procedure prohibits the introduction of extraneous bad acts and offenses during punishment unless the factfinder is satisfied beyond a reasonable doubt that the conduct is attributable to the defendant. Tex. Code Crim. Proc. art. 37.07 § 3(a), (b); *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). A defendant is not required to object to a lack of a burden of proof instruction on unadjudicated offenses admitted during punishment for the purpose of assessing punishment. *Id.* The failure of the trial court to provide a section 3(a) instruction in this case was error. *Id.* We thus consider the harm of this error under the standard set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g) (providing standards of review for jury charge error depending on whether the error was subject to timely objection).

Because appellant failed to object to this error, we would only reverse if appellant were egregiously harmed. *Zarco v. State*, 210 S.W.3d 816, 823 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Almanza*, 686 S.W.2d at 171). We determine harm by considering the entire jury charge, the state of the evidence, arguments of counsel, and any other information revealed by the record. *Almanza*, 686 S.W.2d at 171. Appellant must show actual harm, not simply theoretical harm. *Ferguson v. State*, 335 S.W.3d 676, 686 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Here, appellant does not point to any actual harm resulting from the trial court's failure to instruct on the burden of proof on unadjudicated offenses; appellant merely urges that "he did not receive a fair and impartial trial." We have

examined the record and discern no actual harm. As discussed above, appellant's objection to this evidence was a Rule 609 objection, indicating that appellant was concerned with this evidence being used for impeachment purposes, rather than as extraneous-offense evidence. And although the State did impeach appellant with this evidence, the State then clarified that appellant had not been convicted for this offense and that the woman had not been hurt. During closing argument, appellant's counsel downplayed the significance of this offense by noting that it was a minor offense that did not include any jail time. The State responded in closing argument by noting that appellant did not have any prior convictions and focusing on appellant's credibility during his testimony.

Moreover, we note that the State requested the maximum sentence of twenty years, and the jury assessed appellant's punishment at three years, which is only one year above the minimum. *See* Tex. Penal Code § 22.02(b) (aggravated assault is a second degree felony under the facts of this case); *id.* § 12.33 (range of punishment for second degree felony is two to twenty years); *cf. Boston v. State*, 965 S.W.2d 546, 550 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (concluding that to find harmful error based on jury charge during sentencing, "we must find beyond a reasonable doubt that the error did not serve to increase the appellant's punishment").

In light of the evidence, the nature of this offense, the arguments of counsel, and the punishment appellant received, appellant was not egregiously harmed from the erroneous jury instruction. *See Almanza*, 686 S.W.2d at 174; *see also Ferguson*, 335 S.W.3d at 686. For the foregoing reasons, we overrule appellant's fourth issue.

14

## CONCLUSION

We have overruled each of appellant's issues. We therefore affirm the trial court's judgment.

/s/    Sharon McCally
Justice

Panel consists of Justices Christopher, McCally, and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).