# NO. 12-17-00132-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL GUISTO CROMEY, JR.,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Michael Guisto Cromey, Jr., appeals his conviction for aggravated assault. Appellant raises three issues on appeal. We affirm.

## BACKGROUND

Tyler Police Department Officers April Molina and Jeremy Thompson responded to an emergency call, and a man later identified as Appellant approached the officers while shirtless and covered in blood. He stated his father hit him in the head, so Appellant struck him with "something." Shortly thereafter, Appellant further explained to the officers that his wife's dog bit him, he swung at the dog, Appellant's father "came after [Appellant]," and that Appellant then swung the "car . . . car whatever" while waving his arms in a striking motion. He also expressed concern for his father. The officers made their way to an apartment and observed large quantities of blood on the wall and floor of the stairwell and breezeway area near the apartment door, along with a metal vehicle bike rack pipe covered in blood.

Appellant's wife and his father were inside the apartment. Appellant's father had a large laceration on his head, and his face, arms, and clothes were covered in blood. He stated that he suffered the injury because Appellant struck him with the bicycle rack pipe. The officers learned that Appellant's father leased the apartment, and that he allowed Appellant and his wife to stay

there temporarily for a short period of time.  Appellant's father was transported to the hospital and received several sutures and pain medication.  Based on their investigation, the officers arrested Appellant.

Appellant was later indicted for aggravated assault with a deadly weapon, with the punishment level enhanced to that of a first-degree felony due to Appellant's prior felony conviction.  Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial.  The primary witnesses included the arresting officers, Appellant's father, and Appellant's wife.  Appellant's wife and father had conflicting testimony concerning the events leading to the injuries of Appellant's father.  The jury ultimately found Appellant guilty of the offense, and after a punishment hearing, sentenced him to seventeen years of imprisonment.[1]  This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends the evidence is insufficient to support the jury's implicit rejection of his deadly force self-defense claim.

### Standard of Review

We review sufficiency challenges to the jury's implicit rejection of a self-defense claim under the *Jackson v. Virginia* standard.  *See Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89, 61 L. Ed. 2d 560 (1979)).  The jury implicitly rejects a defendant's self-defense claim if it finds the defendant guilty of the underlying offense.  *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).  Whether the defendant acted in self-defense is a fact issue to be determined by the jury, and the jury exclusively determines the weight and credibility of the evidence in support of a self-defense claim.  *Smith*, 355 S.W.3d at 146.  Under this standard, we defer to the factfinder's resolution of conflicting inferences in the record.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.  In assessing a self-defense claim, the jury may consider the totality of the circumstances leading up to, during, and after the use of force.  *See Whipple v. State*, 281 S.W.3d 482, 497–98 (Tex. App.—El Paso 2008, pet. ref'd).  Defensive evidence that is merely consistent with the physical evidence at the scene will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence.  *Saxton,* 804 S.W.2d at 914.

---

[1] Appellant pleaded "true" to the enhancement allegation in the indictment.

The defendant bears the burden of producing some evidence to support his self-defense claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces that evidence, the State then bears the burden of persuasion to disprove the defense. *Id.* This burden of persuasion does not require the State to produce evidence to disprove the defense; it must only prove its case beyond a reasonable doubt. *Id.*; *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see also* *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Thus, when deciding whether the evidence is sufficient to support the jury's rejection of a claim of self-defense, the task of the appellate court is to "determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914.

**Applicable Law**

The Texas Penal Code's justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used. *Kelley v. State*, 968 S.W.2d 395, 399 (Tex. App.—Tyler 1998, no pet.). A person is justified in using force against another when and to the degree that he reasonably believes the force is immediately necessary to protect against the other person's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2011). If a person is justified in using force under Section 9.31, he may use deadly force when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force. *Id.* § 9.32(a) (West 2011). A "[r]easonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2018). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3) (West 2011). The amount of force used must be in proportion to the force encountered. *Kelley*, 968 S.W.2d at 399.

**Discussion**

The officers' body camera videos show that they were told that Appellant's father was the first person to strike a blow, which was confirmed by the officers at trial. Moreover, Appellant introduced evidence through his wife's testimony that his father choked Appellant and attempted

to throw him down the stairs. Thus, Appellant satisfied his burden of production, and accordingly, the trial court included the self-defense instruction in its charge to the jury. At trial, the officers testified that striking someone in the head with the metal bike rack pipe can cause death or serious bodily injury. Moreover, the treating emergency room physician testified that the blunt force trauma strike suffered by Appellant's father was a serious bodily injury. The question therefore is whether Appellant reasonably believed that deadly force was immediately necessary to protect himself against his father's use or attempted use of unlawful deadly force.

Appellant's wife testified that the fight began because Appellant refused to purchase replacement tires for his father's motorcycle, and that he "smacked [Appellant] in the ear." As Appellant and his wife attempted to leave, the dog bit Appellant, the dog began having a seizure, and Appellant's wife provided treatment to the dog. She testified that, instead of merely grabbing Appellant and pulling him outside the apartment, Appellant's father choked him with both arms around his neck until Appellant's face turned red and he could not speak. She also claimed she told the officers that Appellant's father looked like he was going to push Appellant down the stairs during the struggle. However, she testified that she did not see the actual events leading to Appellant's father's injury because she was tending to her dog at the time. She initially testified that she believed Appellant's father suffered the head injury by hitting his head on a door knob, and that Appellant did not use the bike rack pipe because it was in the same place it had been for several days prior to the incident. However, when pressed during her testimony, she vacillated as to how the injury occurred.

Appellant's father testified that he observed Appellant become angry with his wife, and that the dog bit Appellant during the commotion. After Appellant struck the dog, his father forcefully removed Appellant from the apartment. Appellant's father explained that Appellant calmed down and they reentered the apartment. Shortly thereafter, Appellant's father testified, he saw Appellant prepare to strike his wife with the bicycle rack pipe. Consequently, Appellant's father grabbed Appellant and again removed him from the apartment. Appellant's father denied choking Appellant or squeezing his throat, stating that he "didn't have ahold of his neck," and that if he wanted to apply pressure to Appellant's neck he would have had "to reach up." Appellant's father explained that he had both arms around Appellant's chest to prevent Appellant's strikes from the bicycle rack pipe. Further, Appellant's father testified that he was not attempting to throw Appellant down the stairs but was pulling Appellant along with him to the first floor of the

4

apartment building to "let him cool off," and if Appellant had fallen, both men would have tumbled to the bottom of the stairwell together. He explained that he would not attempt to seriously injure or kill Appellant. We note that Appellant never claimed that his father attempted to choke him on the night of the incident.

The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness's testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). What weight to give contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). It was thus within the sole province of the jury to resolve the conflicting versions of events offered by Appellant's wife and father because it turned on an evaluation of their credibility and demeanor. *See id.* By its verdict, the jury credited the testimony of Appellant's father that he never used or attempted to use unlawful deadly force against Appellant, and that therefore, Appellant was not justified in using deadly force in self-defense. *See* TEX. PENAL CODE ANN. § 9.32(a)(2)(A); *Saxton*, 804 S.W.2d at 914 ("[T]he jury is free to accept or reject the defensive evidence. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory."). Because a rational jury could have found beyond a reasonable doubt against Appellant on the deadly force self-defense issue, Appellant's first issue is overruled.

## EXCLUSION OF TESTIMONY

In his second issue, Appellant argues that the trial court erred when it excluded evidence pertaining to the violent nature of Appellant's father.

## Standard of Review and Applicable Law

We review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). There is no abuse of discretion as long as the court's ruling is within the zone of reasonable disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

A defendant who raises the issue of self-defense may also introduce evidence of a victim's character trait for violence to show that the victim was the first aggressor, but the defendant may do so only through reputation and opinion testimony. *See* TEX. R. EVID. 404(a)(3), 405(a); *Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2009). Evidence of a person's other crimes,

wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity with that character. TEX. R. EVID. 404(a)(1); *see Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998) (explaining that evidence of a person's character may not be used to prove that the person "behaved in a particular way at a given time").

However, a defendant may also introduce evidence under Rule 404(b) of a "victim's prior specific acts of violence when offered for a non-character purpose—such as his specific intent, motive for an attack on the defendant, or hostility—in the particular case." *Ex parte Miller*, 330 S.W.3d at 620; *see* TEX. R. EVID. 404(b)(2). As long as the proffered violent acts explain the outward aggressive conduct of the alleged victim, and in a manner other than demonstrating only character conformity, prior specific acts of violence may be admitted even though those acts were not directed against the defendant. *See Torres*, 71 S.W.3d at 762.

**Discussion**

Appellant offered evidence through his stepmother that Appellant's father, while intoxicated, assaulted her on many occasions, and that two years prior to Appellant's trial, Appellant's father threatened to shoot her and her children. In excluding this evidence, the trial court found that the evidence was unambiguous that Appellant's father was the first aggressor. The court also found that any probative value of the evidence was outweighed by the danger of unfair prejudice under Rule 403.[2]

Under Rule 404(b), a victim's prior acts of violence may be admissible to clarify the issue of first aggressor if the proffered act explains the victim's ambiguously aggressive conduct. *Allen v. State*, 473 S.W.3d 426, 446 (Tex. App.—Houston [14th Dist.] 2015), *pet. dism'd, improvidently granted*, 517 S.W.3d 111 (Tex. Crim. App. 2017). Thus, as a condition precedent to the admissibility of an extraneous act of the victim, there must exist "some ambiguous or uncertain evidence of a violent or aggressive act by the victim." *Reyna v. State*, 99 S.W.3d 344, 347 (Tex. App.—Fort Worth 2003, pet. ref'd).

Officers Molina and Thompson testified that they were told that Appellant's father struck the first blow, which was confirmed by their body camera videos at trial. Appellant's wife testified that Appellant's father struck him in the ear first. She also testified that Appellant's father choked him. Appellant's father admitted that he forcefully removed Appellant from the apartment. It is therefore unambiguous that Appellant's father was the first aggressor. Because Appellant's

---

[2] Appellant does not challenge the trial court's exclusion of this evidence on Rule 403 grounds.

father's unambiguous violent actions need no explaining, evidence of the victim's extraneous conduct admitted in conjunction with his unambiguous act would have no relevance apart from its tendency to prove the victim's character conformity, and thus would be inadmissible. *Id.*

Appellant appears to argue that this evidence is relevant to show another purpose, namely his father's state of mind or intent to harm Appellant. Rule 404(b) only allows evidence of a victim's prior acts of violence to be admitted when the prior acts of violence are relevant to the ultimate confrontation such that they clarify or explain the victim's ambiguous conduct in some way other than showing he acted in accordance with a violent character. *See, e.g.*, *Tate*, 981 S.W.2d at 193 (evidence that victim stated, several months prior to his death, that he would kill defendant was admissible to show victim's intent or motive to cause the defendant harm on the night he arrived at defendant's home and defendant stabbed him); *Torres*, 71 S.W.3d at 761 (holding that the victim's previous threat made to third party in the victim's efforts to find his ex-girlfriend and her children were relevant to show the victim's intent to commit violence against anyone who might stand between him and the girlfriend).

Appellant did not connect the proffered evidence of the victim's abuse of Appellant's stepmother and threat toward her children with the victim's motive or state of mind at the time of the offense. The record does not contain any explanation of how Appellant's father's specific prior acts of violence were relevant to the ultimate confrontation, nor what the acts were admissible to prove other than conformance with a violent character. Such use of evidence of prior acts is prohibited by Rule 404. *See* TEX. R. EVID. 404(b)(1). Accordingly, we hold that the trial court's decision to exclude the evidence of the victim's prior acts was not an abuse of discretion. *See Allen*, 473 S.W.3d at 446 (defendant failed to show how prior physical abuse of girlfriend and gang membership clarified victim's aggressive conduct toward defendant other than showing violent character conformity); *Coleman v. State*, 935 S.W.2d 467, 470 (Tex. App.—Tyler 1996, pet. ref'd) (holding evidence of aggressive horseplay between victim and defendant several months before assault inadmissible because not relevant to self-defense theory). We therefore overrule Appellant's second issue.

## COURT COSTS

In his third issue, Appellant argues that the trial court erred by imposing unconstitutional court costs.

**Applicable Law**

The imposition of court costs upon a criminal defendant is a "nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case." *Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014). The consolidated fee statute requires a defendant to pay a court cost of $133.00 on conviction of a felony. TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West 2011). The money received is divided among a variety of state government accounts according to percentages dictated by the statute. *See id.* § 133.102(e) (West 2011); *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017).

In *Salinas*, the court of criminal appeals held the statute to be unconstitutional with respect to two of these accounts—an account for "abused children's counseling" and an account for "comprehensive rehabilitation." *See Salinas*, 523 S.W.3d at 105. As a result, the court set forth that any fee assessed pursuant to the statute must be reduced pro rata to eliminate the percentage of the fee associated with these accounts. *See id.* The court further held that its holding applies only to (1) a defendant who raised the appropriate claim in a petition for discretionary review before the date of the court's opinion, if that petition is still pending on that date and the claim would otherwise be properly before the court on discretionary review or (2) a defendant whose trial ends after the mandate in *Salinas* issues.[3] *See id.* at 112–13.

**Discussion**

Except for the amounts allocated to the abused children's counseling and comprehensive rehabilitation accounts, Appellant does not contest the amount of court costs assessed against him. He points to the constitutionality of those fees under *Salinas* and argues that the amount of court costs should be proportionately reduced. Because (1) no petition for discretionary review is pending on Appellant's claim and (2) the proceedings in the trial court ended on March 30, 2017— prior to the court's mandate in *Salinas* on June 30, 2017—the court's holding in that case does not apply. *See id.*; *see also Salinas v. State*, No. PD–0170–16 (Tex. Crim. App. June 30, 2017) (mandate); *Smith v. State*, No. 12-17-00089-CR, 2018 WL 345740, at *4 (Tex. App.—Tyler Jan. 10, 2017, no pet.) (mem. op., not designated for publication). Accordingly, we overrule Appellant's third issue.

---

[3] Before the mandate issued, the Legislature amended Section 133.102(e), effective June 15, 2017, to redirect funds previously allowed to abused children's counseling and comprehensive rehabilitation to the fair defense account. *See* Act of May 18, 2017, 85th Leg., R.S., ch. 966, § 1, 2017 Tex. Sess. Law Serv. 3917, 3917–18 (West) (current version at TEX. LOC. GOV'T CODE ANN. § 133.102(e) (West Supp. 2018)).

## DISPOSITION

Having overruled Appellant's three issues, we *affirm* the trial court's judgment.


**JAMES T. WORTHEN**
Chief Justice


Opinion delivered December 12, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 12, 2018**

**NO. 12-17-00132-CR**

**MICHAEL GUISTO CROMEY, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-1667-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*